## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

Case No. 1:25-cv-23377-DSL

JETCHILL LTD,

      Plaintiff,

v.

SHENZHEN JIARUI MINGHUI
TRADING CO., LTD., and
EXPLONOVA STORE,

      Defendants.

_____/

## <u>REPORT AND RECOMMENDATIONS</u>

**THIS CAUSE** is before the Court upon Plaintiff Jetchill Ltd's Motion for Preliminary Injunction, (ECF No. 21). Named Defendants Shenzhen Jiarui Minghui Trading Co., Ltd. and Explonova Store (collectively, "Defendant")[1] filed a Response in Opposition to the Motion, (ECF No. 51), to which Plaintiff filed a Reply, (ECF No. 56). The undersigned convened an evidentiary hearing on Plaintiff's Motion on October 23, 2025, a transcript of which has been filed on the docket. (ECF No. 77). The Court permitted the Parties, upon their request, to file written closing arguments in lieu of oral closings, (*id.* at 128), and the Parties submitted their Closing Briefs on November 3, 2025. (ECF Nos. 78, 80). Having reviewed the Parties' briefing, the oral argument and evidentiary proffers at the October 23 Hearing, and the record as a whole, and based on the reasoning set forth below, the undersigned respectfully recommends that Jetchill's Motion for Preliminary Injunction be **DENIED**.

---

[1] Explonova Store is the seller name of Jiarui Minghui Trading Company, Ltd. (ECF No. 22 at 1). Accordingly, this Report and Recommendation refers to the two named Defendants, collectively, as a single party.

## I.      BACKGROUND AND PROCEDURAL HISTORY

This action concerns aroma guns—bubble-making machines for use in beverage and cocktail mixing—and bubble mixtures and cocktail aromas designed for use therewith. Jetchill, a UK manufacturer of tools, accessories, and ingredients for the hospitality industry.

On July 28, 2025, Jetchill filed a Complaint seeking damages and injunctive relief against Defendant. (ECF No. 1). The Complaint alleges, broadly, that Defendant has promoted, advertised, sold and/or offered for sale "counterfeits and infringements of Plaintiff's high-quality patented aroma guns, and bubble mixtures and cocktail aromas[.]" (*Id.* ¶ 104). Plaintiff asserts six Counts against Defendant: Trademark Infringement (Count I); False Designation of Origin (Count II); Common Law Trademark Infringement (Count III); Design Patent Infringement (Count IV); Utility Patent Infringement (Count VI); and Deceptive or Unfair Trade Practices in violation of Florida Law (Count VII).[2] (*Id.* at 22–27). Plaintiff seeks entry of a preliminary injunction premised on its trademark infringement and patent infringement claims. (ECF No. 21).

Plaintiff registered the "FLAVOUR BLASTER" trademark, Registration No. 7,367,037, on April 23, 2024. (ECF No. 73-1). Plaintiff also owns a design and a utility patent for its Flavour Blaster aroma gun. Plaintiff registered the design patent, entitled "Bubble Maker," U.S. Patent No. D960,994 S, on August 16, 2022. (ECF No. 73-4). Plaintiff registered the utility patent, entitled "Device or System for Creating a Vapour Filled Bubble," U.S. No. 11,944,994 B2, on April 2, 2024. (ECF No. 73-5). Defendant registered a design patent for its own aroma gun, the Aroma Blaster, on October 29, 2024. Defendant's design patent is entitled "Smoke Device," U.S. Patent No. D1,049,471 S. (ECF No. 78-1).

---

[2] Plaintiff's Complaint omits Count V.

On August 13, Plaintiff moved to impose an *ex parte* temporary restraining order (TRO) on Defendant, (ECF No. 5), which motion the Court granted on August 27. (ECF No. 11). The TRO as first issued was set to expire on September 10. (*Id.*). Subsequently, and while the TRO was pending, Plaintiff filed the present Motion for Preliminary Injunction, (ECF No. 21). After entering the litigation, Defendant filed a Motion to Dissolve the TRO, (ECF No. 22). Plaintiff filed a Motion to Extend the TRO beyond its September 10 date of expiry, (ECF No. 24). Plaintiff's Motion was granted, in part, (ECF No. 28), whereupon the Plaintiff's request for continued extension of the TRO, its Motion for Preliminary Injunction, and Defendant's Motion to Dissolve were referred to the undersigned for a report and recommendation. (ECF No. 34).

On October 13, 2025, the undersigned recommended that Defendant's Motion to Dissolve be denied, as moot, and that Plaintiff's Motion to Extend the TRO be denied. (ECF No. 52). On October 21, the District Court adopted the undersigned's Report and Recommendation. (ECF No. 67). Still to be resolved was Plaintiff's Motion for Preliminary Injunction.

An evidentiary hearing on the Motion was held on October 23. At the hearing, information came to light that had not been presented to the Court when it ruled on Plaintiff's *ex parte* Motion for Temporary Restraining Order, (ECF No. 11). First, it was revealed that Plaintiff had first learned of Defendant's alleged infringement of Plaintiff's intellectual property rights "sometime in 2023." (ECF No. 77 at 110). Second, the Parties advanced evidence demonstrating that Defendant's seller name, "Explonova," is prominently displayed upon its Aroma Blaster products and packaging. *See* (*id.* at 92–93).

At the hearing, Plaintiff relied on the testimony of Mr. Robert Flunder, the Company's co-founder, as well as on the testimony of Plaintiff's lead counsel. *See* (ECF No. 77 at 26–27). In support of Plaintiff's position on its trademark claim, Mr. Flunder testified as to the FLAVOUR

BLASTER's conception and launch in 2019, how the device functions, (*id.* at 29–30), core buyer base (*id.* at 30), sales and distribution channels and practices, (*id.* at 30–31), and marketing and advertising channels, (*id.* at 32–33).

Plaintiff sells its Flavour Blaster aroma gun in the business-to-business hospitality space. Specifically, Plaintiff proffers that its consumers include "all types of hospitality venues; whether it is restaurants, bars, clubs, hotels, all the way from small bars . . . that hold 20 people all the way up to multinational companies such as Disney . . . . An example would be PF Chang's, which has 220 venues across the USA." (ECF No. 77 at 30). Plaintiff's Exhibit No. 13—representing Defendant's proprietary webpage for the Aroma Blaster—advertises the product as "[p]erfect for bar counters, outdoor picnics, and family gatherings," and as "a unique and thoughtful gift for any occasion, including weddings, housewarmings, anniversaries, Christmas, Thanksgiving, and birthdays." (ECF No. 73-13, Pl's Ex. No. 13 at 1). Both parties sell their product online, through their own company webpages, e-commerce markets such as Amazon, and, in Plaintiff's case, through distributors. (*Id.* at 30–31).

Mr. Flunder testified that Jetchill became aware of suspected "copycat" products infringing on its trademark "around 2022" (*id.* at 35–36, 54–55). Plaintiff became aware of Defendant's marketing and sale of the AROMA BLASTER "sometime in 2023," (*id.* at 110). He further spoke to the effect of these copycat products' availability in the marketplace on its business reputation, revenues, and annual marketing and promotional spend, (*id.* at 36–40, 43–52, 56–57), and on its efforts to combat alleged infringement—initially through the Amazon Grand Registry and later through litigation—and remediate perceived or anticipated confusion among its products and alleged infringers' goods, (*id.* at 55–59, 65).

On cross-examination, Defense counsel elicited Mr. Flunder's testimony regarding trademark confusion. For example, Defense counsel referred to images of the Flavour Blaster and Aroma Blaster product kits and questioned Mr. Flunder regarding the kits' display of the Parties' respective brand logos. (*Id.* at 92–93). Defense counsel also suggested that Jetchill's loss in revenues could be owing to factors other than competitive entry; for example, the Flavour Blaster's comparatively high sales price point in the market. *See* (*id.* at 125).

Concerning Plaintiff's design patent claim, Mr. Flunder testified as to the inspiration for the Flavour Blaster's ornamental design. *See, e.g.*, (*id.* at 59). Originally inspired by the Dewalt Drill, the Flavour Blaster was repeatedly described as lending a unique tone of theatricality to the mixology space. *See, e.g.*, (*id.* at 59–60, 61, 69, 139). The device was designed to appear "a bit Sci-Fi" and reminiscent of "Star Wars," wherein a "blaster" is a futuristic gun. (*Id.* at 62).

On cross-examination, Defense counsel sought to distinguish the Flavour Blaster and Aroma Blaster's ornamental designs. Mr. Flunder testified that, whereas the Aroma Blaster could conceivably be designed to resemble a wand rather than a gun, both products shared the overall "look" of a gun or a hand drill—hence their "blaster" nomenclature. (*Id.* at 96–99). Mr. Flunder conceded that specific features of the Aroma Blaster differ from those of the Flavour Blaster. For example, the Flavour Blaster has arrows on its nozzle, whereas the Aroma Blaster does not. (*Id.* at 98, 102). Mr. Flunder acknowledged numerous discrete differences amongst the products but maintained that the overall looks of the devices were very similar. (*Id.* at 98–99, 104).

Defense counsel further queried Mr. Flunder as to why Plaintiff had waited longer than one year from the date of its patent registration to bring its claims. Mr. Flunder testified that Jetchill did try to take action against various companies, and that it had attempted to combat suspected infringement through the Amazon web marketplace's Grand Registry before bringing suit.

As to Plaintiff's utility patent claim, Mr. Flunder testified that the Flavour Blaster and Defendant's Aroma Blaster perform the same function in the same way. (*Id.* at 69). Plaintiff moved into evidence an exhibit comparing the language of the Flavour Blaster's utility patent to the functions of the Aroma Blaster; the exhibit was used as a demonstrative, (*id.* at 81–82).

Defense counsel questioned Mr. Flunder regarding the patent prosecution—specifically, on Flavour Blaster's resemblance to certain prior art and the extent of Jetchill's awareness that such prior art existed at the time of its design patent, (*id.* at 112–117), and utility patent applications, (*id.* at 121–123). The Court observed that Mr. Flunder's personal familiarity with the patent prosecution was limited. (*Id.* at 117).

Because issues not raised in the briefing had arisen during the evidentiary hearing—chiefly that of Plaintiff's delay in pursuing this injunction—the Court permitted the Parties to waive oral closing argument and submit closing briefs encapsulating their positions instead. The Parties' closing briefs, (ECF Nos. 78, 80), largely reiterate their positions on the merits of each claim. The Parties also address delay. In tandem with Plaintiff's filing of its closing brief, (ECF No. 80), Plaintiff moved the Court to take judicial notice of the record of a lawsuit initiated in November 2024 in the Northern District of Illinois. (ECF No. 79). In that lawsuit, Plaintiff had asserted trademark and design patent infringement claims against 90 different defendants, including Defendant here. (ECF No. 80-2 at 1–2). The action was dismissed in March 2025 for improper joinder of parties under Federal Rule of Civil Procedure 19. (ECF No. 80-7). Plaintiff claims that this litigation supplies an additional temporal link—as yet unmentioned in the Parties' briefing or at the hearing—resolving the Court's concerns with Plaintiff's delay in bringing its trademark, design patent, and utility patent claims against Defendant here.

## II.     LEGAL STANDARD

In order to obtain a preliminary injunction, a plaintiff must demonstrate: (1) a substantial likelihood of success on the merits; (2) that irreparable injury will be suffered if the relief is not granted; (3) that the threatened injury outweighs the harm the relief would inflict on the non-movant; and (4) that granting the relief would not be adverse to the public interest. *Scott v. Roberts*, 612 F.3d 1279, 1290 (11th Cir. 2010); *see Schiavo ex rel. Schindler v. Schiavo*, 403 F.3d 1223, 1225–26 (11th Cir. 2005)). A movant must "clearly establish" all four of the above-listed prerequisites. *Café 207, Inc. v. St. Johns Cnty.*, 989 F.2d 1136, 1137 (11th Cir. 1993). "Injunctive relief may not be granted unless the plaintiff establishes the substantial likelihood of success criterion." *Schiavo*, 403 F.3d at 1226 (citations omitted); *see Grupo Mexicano de Desarrollo v. All. Bond Fund, Inc.*, 527 U.S. 308, 339 (1999) (Ginsburg, J., concurring) ("Plaintiffs with questionable claims would not meet the likelihood of success criterion.").

A preliminary injunction is "an extraordinary and drastic remedy" which a court should grant only when the movant clearly carries the burden of persuasion as to each of the four prerequisites. *See Four Seasons Hotels & Resorts, B.V. v. Consorcio Barr, S.A.*, 320 F.3d 1205, 1210 (11th Cir. 2003); *ACLU v. Miami-Dade Cnty.*, 557 F.3d 1177, 1198 (11th Cir. 2009) (internal citations omitted). Put otherwise, injunctive relief is never granted as of right but rather upon a clear showing of entitlement. *See Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008).

## III.     DISCUSSION

The Parties dispute whether entry of a preliminary injunction is warranted on Plaintiff's three core claims: Trademark Infringement under the Lanham Act, 15 U.S.C. § 1114; Design Patent Infringement under 35 U.S.C. § 271; and Utility Patent Infringement under 35 U.S.C. § 271. *See infra*, Parts III(C)(1)–(3). Plaintiff moves pursuant to 15 U.S.C. § 1116, Federal Rule of Civil

Procedure 65, 35 U.S.C. §§ 281, 283, and the All Writs Act, 28 U.S.C. § 1651(a). (ECF No. 21 at 1). Before considering whether Plaintiff has met its burden under the four-factor test, the undersigned evaluates the issues of personal jurisdiction and delay.

### A.   Defendant Has Waived Any Objection to the Court's Exercise of Personal Jurisdiction

Courts in the Eleventh Circuit may consider jurisdictional issues in analyzing a Rule 65 movant's likelihood of success on the merits of their claims. *See, e.g.*, *Liberty Media Holdings, LLC v. Letyagin*, No. 11-62107-CV, 2011 WL 13217328, at *3 (S.D. Fla. Dec. 14, 2011) (denying motion for TRO where Plaintiff failed to show "that Defendant's conduct can, in line with the Constitution, subject it to jurisdiction in this forum"). Plaintiff avers in its Motion that the Court possesses personal jurisdiction over Defendant. (ECF No. 21 at 2–5). In addition to placing the Court's personal jurisdiction in issue by its pleadings and Motion, at the October 23 hearing, counsel for Plaintiff gave testimony to substantiate Plaintiff's proffer that he had successfully executed a "test purchase" of Defendant's Aroma Blaster product, and successfully had the product shipped to Florida, prior to bringing suit. *See* (ECF No. 77 at 127–28). Plaintiff relies on this test purchase, and other allegations premised on information and belief, to demonstrate that Defendant has in fact sold its allegedly infringing products into the state of Florida.

Without deciding the sufficiency of the facts substantiating Plaintiff's assertion of personal jurisdiction, the undersigned concludes that Defendant has waived personal jurisdiction by appearing in this litigation, arguing the merits of its position, and failing to object to personal jurisdiction in its responsive papers. "[A] party's right to dispute personal jurisdiction is waived if the party fails to assert that objection in its first Rule 12 motion, other responsive pleading or general appearance." *Oldfield v. Pueblo De Bahia Lora, S.A.*, 558 F.3d 1210, 1218 n.21 (11th Cir. 2009) (citing Fed. R. Civ. P. 12(h)); *Guarantee Ins. Co. v. Brand Mgmt. Serv., Inc.*, No. 12-61670,

2012 WL 12837296, at *2–3 (S.D. Fla. Dec. 11, 2012) ("The filing of a preliminary-injunction motion . . . can require a party to raise its process-based defenses prior to filing a Rule 12(b) motion.") (citations omitted); *see also Am. Airlines, Inc. v. Spada*, No. 23-21844-CIV, 2024 WL 2797379, at *3–4 (S.D. Fla. May 1, 2024) (collecting cases).

Defendant entered this litigation after receiving notice of the Court's issuance of an *ex parte* TRO against it on September 4. (ECF No. 13). Upon entry, Defendant sought to dissolve the TRO on merits-based grounds. (ECF No. 22). Concurrently, Defendant opposed extension of the TRO and Plaintiff's request for a preliminary injunction. (ECF No. 25). Counsel for Defendant offered no rebuttal to Plaintiff's counsel's jurisdictional testimony at the October 23 evidentiary hearing. *See* (ECF No. 77 at 128).

Defendant has summarily denied Plaintiff's allegations regarding personal jurisdiction in its Answer. *Compare* (ECF No. 1 ¶¶ 6–16), *to* (ECF No. 65 at 2). Defendant filed the Answer on October 20, 2025, approximately a month and a half after it made its appearance in this action, (ECF No. 13), after the undersigned had issued a report and recommendation on the Parties dueling motions to dissolve or extend the TRO entered against Defendant, (ECF No. 52), and after briefing on Plaintiff's Motion for Preliminary Injunction had ripened, (ECF No. 56). The Answer summarily denies Plaintiff's allegations regarding personal jurisdiction, (ECF No. 65 at 2), but neither levies argument nor advances authority calling the Court's personal jurisdiction into doubt. Based on the foregoing, the undersigned finds that Defendant has waived the right to object to the Court's personal jurisdiction; Defendant is subject to the Court's personal jurisdiction by virtue of such waiver.

Where a party has waived the defense of personal jurisdiction, district courts need not undertake a *sua sponte* personal jurisdiction analysis before ruling on a motion for preliminary

injunction. *See Muldrow v. EZ E-File Tax Preparers, Inc.*, No. 22-12108, 2023 WL 3476416, at *3–4 (11th Cir. May 16, 2023) (affirming district court denial of motion to vacate entry of preliminary injunction where defendant waived defense of lack of personal jurisdiction and district court ruled solely on the issue of waiver); *cf. Celgard, LLC v. LG Chem, Ltd.*, 624 F. App'x 748, 751 (Fed. Cir. 2015) (holding, where issue had been raised, that district court "legally erred by failing to consider whether it had personal jurisdiction over [the defendant] before granting [a] preliminary injunction"). Because the undersigned concludes that the Court possesses personal jurisdiction over Defendant through waiver, the Court need not further evaluate Plaintiff's primary theory of personal jurisdiction in this matter. *See Muldrow*, 2023 WL 3476146, at *3–4.

**B.     Plaintiff's Proffer of the Prior Litigation in the Northern District of Illinois Alleviates the Court's Concerns, in Part**

At the hearing, I advised the Parties of my concern that Plaintiff may have unduly delayed bringing this lawsuit against Defendant. (ECF No. 77 at 130). This concern arose from the testimony of Plaintiff's witness, Mr. Flunder, who testified that Jetchill first learned of alleged infringement of its "FLAVOUR BLASTER" trademark, including Defendant's alleged infringement, "sometime in 2023." (*Id.* at 110). Plaintiff procured its design and utility patents in April 2024. (*Id.*). Plaintiff appeared to have filed this action over two years after its proffered discovery of trademark infringement, and over a year after its patent registrations, in late July 2025. (ECF No. 1); (ECF No. 77 at 130). When I stated my concerns regarding delay, Mr. Flunder testified that Jetchill had sought to remedy suspected infringements of its intellectual property through the Amazon Grand Registry in 2024, before deciding to pursue relief through the courts. (ECF No. 77 at 110, 133).

In part because I had advised the Parties of my concerns regarding an issue that had not been briefed by the Parties, I provided the Parties with a deadline of November 3, 2025 to submit

10

closing briefs in which they could conclude the arguments made at the hearing and advance argument on the issue of delay. (*Id.* at 143–44).

Plaintiff timely submitted its Closing Argument Brief on November 3. (ECF No. 80). Plaintiff maintained that it had made efforts to "use its Amazon agent to obtain cessation of the infringement short of filing suit." (*Id.* at 3). Plaintiff additionally notified the Court of a prior lawsuit in the United States District Court for the Northern District of Illinois, captioned *C.J. LTD v. The Individuals, Partnerships, and Unincorporated Associations Identified on Schedule "A"*, Case No. 1:24-cv-12293 (N.D. Ill. Nov. 27, 2024) (the "Illinois Action"). There, Plaintiff sued 90 alleged infringers of its products for trademark infringement, including Defendant here. That case was filed in November 2024, (ECF No. 80-2 at 31), and was dismissed, for improper joinder of defendants, in March 2025, (ECF No. 80-7 at 5). After dismissal, Plaintiff avers, Plaintiff "re-investigated the case to capture new evidence of Explonova's infringement, determine the addition of the utility patent claim, and file this case in the Southern District of Florida a few months later on July 28, 2025." (ECF No. 80 at 2); *see also* (ECF No. 80-1 at 4) (following dismissal, "Plaintiff's counsel gathered new evidence," "considered the addition of a utility patent infringement claim," made test purchases of Defendant's product on July 17, and, "[u]pon receipt and inspection of the item," concluded "that Defendant[] [was] in fact infringing Plaintiff's utility patent").

Plaintiff asks, in its Closing Brief and by separate motion, that the Court take judicial notice of the record of the Illinois action. (ECF Nos. 79, 80, 80-1). Plaintiff argues that evidence of its effort to prosecute the unsuccessful Illinois action, taken together with Mr. Flunder's testimony, mitigates the undersigned's concern with Jetchill's apparent delay in bringing this action by filling in the temporal gap separating Plaintiff's initial discovery of alleged infringers from the date on

which the present action was filed. (ECF No. 80 at 3). Defendant has not responded to Plaintiff's request.

"A district court may take judicial notice of public records within its files relating to the particular case before it or other related cases." *Cash Inn of Dade, Inc. v. Metro. Dade Cnty.*, 938 F.2d 1239, 1243 (11th Cir. 1991); *see also Lockett v. Experian Info. Sols., Inc.*, No. 20-CV-1427, 2021 WL 4815898, at *1, *12 n.9 (N.D. Ga. Jun. 30, 2021) ("The Court may take judicial notice of public records, such as court filings on public dockets."). The undersigned takes judicial notice of the documents for the limited purpose of establishing the dates on which the Illinois action was filed and later dismissed, as well as the fact that Plaintiff levied trademark and design patent infringement claims relating to suspected infringement of its "FLAVOUR BLASTER" mark and design patent. *See United States v. Jones*, 29 F.3d 1549, 1553 (11th Cir. 1994) ("[A] court may take judicial notice of a document filed in another court 'not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings.") (internal quotation marks and citations omitted).

Pursuit of the Illinois action addresses the Court's concerns that Plaintiff unduly delayed in bringing its trademark and design patent infringement claims, to a degree. Consideration of the Illinois action does not, however, assuage my concerns that Plaintiff delayed in bringing its utility patent claim. Indeed, that Plaintiff filed, in November 2024, an action demonstrating that it knew Defendant was selling an alleged counterfeit of its aroma gun raises questions about why Plaintiff waited—concededly until mid-July 2025, (ECF No. 80-1 at 4)—to investigate and conclude that it could levy a utility patent claim as well. Moreover, Mr. Flunder testified that it had learned of ExploNova's market presence from customers "sometime in 2023." (ECF No. 77 at 110). On

balance, I recognize that the Illinois action at least shows that Plaintiff was actively pursuing relief in federal court for the core of the misconduct it attacks in this Action.

### C.   Plaintiff's Likelihood of Success on its Trademark, Design Patent, and Utility Patent Claims

#### 1.   Plaintiff Has Not Met Its Burden to Show a Substantial Likelihood of Success on Its Trademark Claim

Plaintiff argues that it has met its burden to demonstrate (1) its ownership of the "FLAVOUR BLASTER" trademark at issue; (2) Defendant's use of the trademark; and (3) that Defendant's use of the trademark is likely to cause confusion, mistake, or deception as to the source, affiliation, or sponsorship of Defendant's goods. (ECF No. 21 at 6). Plaintiff asserts that the first element is met because its mark is registered with the USPTO on the Principal Register, (ECF No. 5-7 ¶ 19), and has been continuously used. (ECF No. 21 at 6) (citing (ECF No. 5-7 ¶¶ 20–26, 32)). The second element is met because Plaintiff has not licensed or authorized Defendant to use its Mark, meaning any use by Defendant of the mark is without Plaintiff's authorization. (*Id.*) (citing (ECF No. 5-7 ¶¶ 43, 75)). As for the third factor, Plaintiff argues that Defendant's use of its mark is likely to cause confusion under the applicable seven-factor test. (ECF No. 21 at 6).

Defendant does not dispute Plaintiff's satisfaction of the first or second elements. Rather, Defendant argues that Plaintiff has not met its burden to demonstrate a likelihood of confusion under the applicable seven factor test, primarily because (a) Defendant's use of the descriptive term "AROMA BLASTER" is not confusingly similar to Plaintiff's "FLAVOUR BLASTER" mark, and instead constitutes "fair use" pursuant to 15 U.S.C. § 1115(b)(4), (ECF No. 51 at 5–7); and (b) Defendant has mitigated any confusion shown by prominently displaying the "EXPLONOVA" brand name on its products and product packaging, (*id.* at 7). "Whether in

product packaging or listings," the descriptive term "Aroma Blaster" is "always used together with "Explonova[.]" (*Id.* at 5).

The likelihood of confusion is established under a seven-factor test. *See Ross Bicycles, Inc. v. Cycles USA, Inc.*, 765 F.2d 1502, 1506 (11th Cir. 1985). These factors are: (1) the strength of the mark; (2) the similarity of marks; (3) the similarity of the goods; (4) similarity of the sales methods; (5) the similarity of advertising media; (6) Defendant's intent; and (7) evidence of actual confusion. *See Safeway Store, Inc. v. Safeway Discount Drugs, Inc.*, 675 F.2d 1160, 1164 (11th Cir. 1982). The seven factors are weighed and balanced; no single factor is dispositive. *Id.* Below, the undersigned first evaluates the Parties' presentations under the seven-factor test, then considers Defendant's arguments that any likelihood of confusion is mitigated such that injunctive relief is unwarranted.

### i.      Strength of the Mark

Plaintiff asserts that its "FLAVOUR BLASTER" mark is a strong mark. (ECF No. 21 at 7) (citing ECF No. 5-7 ¶¶ 17–19, 22, 23, 26–28, 31, 32–34, 37). Plaintiff adds that the mark has "acquired secondary meaning resulting from Plaintiff's extensive [marketing] efforts" regarding the mark, and that, as a result, the mark "enjoys widespread recognition in the minds of consumers. (*Id.*) (citing (ECF No. 5-7 ¶ 34)).

The Motion cites paragraphs of the Flunder Declaration describing Plaintiff's ownership of its "FLAVOUR BLASTER" trademark, (*id.* ¶¶ 17–19), stating that the mark has been used in interstate commerce to distinguish Plaintiff's "high-quality goods" and "is a symbol of Plaintiff's quality goods, reputation and goodwill," (*id.* ¶¶ 22, 23), confirming that the mark is exclusive to Plaintiff and displayed extensively on Plaintiff's products, (*id.* ¶ 26), stating that Plaintiff has incurred hundreds of thousands in expense to advertise and market its aroma guns, bubble

14

mixtures, and cocktail aromas, (*id.* ¶¶ 26–27, 31, 32, 37), claiming that its sales in recent years have "exceeded several millions of dollars within the United States," (*id.* ¶ 33), and claiming that "members of the consuming public readily identify" Plaintiff's trademarked goods as being of high quality, (*id.* ¶ 34).

Based on the evidence and testimony advanced at the evidentiary hearing, the FLAVOUR BLASTER mark appears to qualify as a descriptive mark entitled to intermediate weight. A descriptive mark "identifies a characteristic or quality of an article or service as, for example, its color, odor, function, dimensions, or ingredients." *Hard Candy LLC v. Anastasia Beverly Hills, Inc.*, 921 F.3d 1343, 1363 (11th Cir. 2019) (quoting *Soweco, Inc. v. Shell Oil Co.*, 617 F.2d 1178, 1185 (5th Cir. 1980)) (marks omitted). While Plaintiff advanced evidence demonstrating that its product has had success within the hospitality industry, the product Plaintiff sells is known as an aroma gun. *See, e.g.*, (ECF No. 77 at 99). The "FLAVOUR BLASTER" mark describes the Flavour Blaster's function and dimensions. That is, the product literally blasts flavored vapor into cocktails and other mixed drinks, creating an aesthetically pleasing edible bubble. The product's designation as a "blaster" bears upon its function and its dimensions: it resembles a theatrical, "Sci-Fi" handgun. (*Id.* at 62).

Nor has Plaintiff clearly shown that consumers identify the Flavour Blaster aroma gun with Jetchill itself. If a descriptive mark acquires "secondary meaning," then the descriptive mark is strong enough to merit protection under the Lanham Act. *FCOA LLC v. Foremost Title & Escrow Servs LLC*, 57 F.4th 939, 949 (11th Cir. 2023) (citing *Royal Palm Props., LLC v. Pink Palm Props., LLC*, 950 F.3d 776, 782–83 (11th Cir. 2020)). "[A] mark has secondary meaning when consumers view the mark as synonymous with the mark holder's goods or services." *Id.* ("For example, American Airlines could theoretically refer to any airline based in North or South America. But

with the mark holder's time and effort, American Airlines now calls to mind a specific airline through its secondary meaning.").

Jetchill has undisputedly invested time, effort, and resources into building the FLAVOUR BLASTER into a prominent product. At the hearing, Mr. Flunder testified extensively as to Jetchill's use of social media, including "Facebook, Instagram, TikTok, [and] YouTube channels where [it] publish[es] content and interact[s] with [its] customers." (ECF No. 77 at 32). Mr. Flunder spoke to its FLAVOUR BLASTER-branded YouTube page," (*id.* at 33), its FLAVOUR BLASTER-branded Instagram page, (*id.* at 35), its FLAVOUR BLASTER-branded Facebook page, (*id.* at 38), and its FLAVOUR BLASTER-branded TikTok page, (*id.* at 40). Plaintiff uses its social media presence to advertise the Flavour Blaster—including through influencer and celebrity sponsorships—and to educate consumers. Mr. Flunder estimated that Plaintiff expects to spend approximately £500,000 on paid advertising this year. (*Id.* at 42) (noting that, "in 2022, before [Plaintiff] saw the copycats, we were spending half that amount. So we've really had to ramp up our 'paid out spend' to make sure that our brand is at the forefront of customers' minds").

Notwithstanding Plaintiff's commitment to effectively marketing its product, and testimony as to the product's success, the evidence submitted at the hearing does not establish that the Flavour Blaster aroma gun is recognized as the definitive aroma gun. *See, e.g.*, (ECF No. 73-10) (Instagram page describing the Flavour Blaster as the "OG Aroma Gun []."). Mr. Flunder's testimony that "we believe that it is a very strong brand," (ECF No. 77 at 33), is of limited probative value and does not confer secondary meaning on Jetchill's product.

Nor does Plaintiff's evidence of a strong social media presence demonstrate that consumers identify the Flavour Blaster with Jetchill itself. With the exception of its YouTube page, (ECF No. 73-9)—its least trafficked social media page, which holds itself out as "[t]he Official Jetchill &

Flavour Blaster YouTube Channel"—Plaintiff's submissions of its several social media pages demonstrate a concentration on the Flavour Blaster aroma gun product itself. Plaintiff's Instagram page is titled "theflavourblaster," (ECF No. 73-10); its Facebook page is titled "Flavour Blaster," (ECF No. 73-12); and its TikTok page is titled "flavourblaster," (ECF No. 73-16). The undersigned concludes that Plaintiff's evidentiary proffer fails to demonstrate the strength of the "FLAVOUR BLASTER" mark through a showing that the mark is source-identifying and, therefore, entitled to increased protection.

At this early stage of the proceedings, Plaintiff has not met its evidentiary burden to show that "FLAVOUR BLASTER" constitutes a strong, source-identifying mark in the league of a "Verizon" telecommunications or "Apple" computers. *See Engineered Tax Servs., Inc. v. Scarpello Consulting, Inc.*, 958 F.3d 1323, 1327–28 (11th Cir. 2020) (quoting and discussing *Royal Palm Props.*, 950 F.3d at 783). Based on Plaintiff's evidentiary showing, and in its present posture, the undersigned concludes that the mark is descriptive in nature and entitled to intermediate weight.

## ii.    Similarity of Marks

Plaintiff acknowledges that the likelihood of confusion is greater when an infringer uses an exact trademark, but asserts that Defendant is using a "confusingly similar mark, 'AROMA BLASTER,' to the FLAVOUR BLASTER Mark." (ECF No. 21 at 7). As support, Plaintiff asks the Court to compare its own Trademark Registration, (ECF Nos. 1-1, 73-1), to screen captures of Defendant's products in the Flunder Declaration, (ECF No. 5-7).

While Defendant does not respond to Plaintiff's articulation of the seven-factor analysis, Defendant does emphasize that its use of the term "AROMA BLASTER" is not identical to Plaintiff's "FLAVOUR BLASTER" mark and is descriptive of its own aroma gun.

Based on the evidence adduced at the hearing, the undersigned concludes that Plaintiff has not met its burden to show that the marks are confusingly similar. Plaintiff does show some basis for its claim that the marks marshal similar language—both products are designated "[Descriptor] Blaster." As noted above, however, that similar language is descriptive in nature.

Plaintiff levies a scientific and linguistic argument linking "flavor" to "aroma." (ECF No. 21 at 6). Plaintiff argues that "[f]lavor refers to the overall perception of taste, which—as established in food science and by regulatory authorities—is largely determined by [] aroma (sense of smell)." In turn, "[r]esearch demonstrates that up to 80% or more of what people perceive as 'flavor' actually comes from the aroma." (*Id.*). Plaintiff further proffers that, "[i]n the context of product marketing . . . consumers generally understand that flavor and aroma are interrelated." (*Id.* at 6–7).

Plaintiff has not substantiated these assertions with evidence suggesting that reasonable consumers have or would intermingle the descriptive terms "FLAVOUR" and "AROMA" and conclude, based on such confusion, that two products bearing the respective names originated from the same source. Additionally, the undersigned finds persuasive Defendant's argument, relayed below, that the prominent display of the products' respective brand logos on certain of the products themselves, their packaging, and their web marketplace postings, mitigates what confusion may result from the facial similarity of "FLAVOUR BLASTER" and "AROMA BLASTER" considered alongside each other. (ECF No. 77); *see* (ECF Nos. 73-13, 73-15, 73-18) (Defendant's product kit); (ECF No. 73-8) (Plaintiff's product kit).

### iii.   *Similarity of Goods*

Plaintiff reiterates its claim that Defendant is "selling counterfeit Jetchill products using marks identical or confusingly similar to the FLAVOUR BLASTER Mark." (ECF No. 21 at 7). In

support, Plaintiff again directs the Court to compare its own Trademark Registration, (ECF No. 1-1), with screen captures of Defendant's products contained in the Flunder Declaration, (ECF No. 5-7). Plaintiff adds that, use of a similar trademark aside, Defendants' products and Plaintiff's goods are indistinguishable. (ECF No. 21 at 7) (citing (ECF No. 5-7 ¶ 58)).

The aroma guns at issue here are doubtless similar. Both Parties' products fulfill the same function and share the same overall design. The undersigned concludes that this factor favors the Plaintiff. The products' resemblance dovetails with the undersigned's analysis of Plaintiff's likelihood of success on the merits of its design patent claim below.

<em>iv.    Similarity of Sales Methods</em>

Plaintiff emphasizes that both it and Defendant sell their products using "at least one of the same marketing channels, the Internet," adding that the Parties do so in the same geographical distribution areas within the United States, including the Southern District of Florida. (ECF No. 21 at 7) (citing (ECF No. 5-7 ¶¶ 9, 11, 32, 50, 51, 57, 79)). Further, Plaintiff notes that the Parties' sales channels directly overlap because they both sell their products through Amazon. (*Id.*) (citing (ECF No. 5-7 ¶¶ 9, 50)).

The cited paragraphs of the Flunder Declaration state that Jetchill sells its products through Amazon and its own website, as well as other authorized distributors, (ECF No. 5-7 ¶ 9), that it sells its products in Florida, (*id.* ¶ 11), that it has "extensively used, advertised, and promoted the FLAVOUR BLASTER Mark in the United States," (*id.* ¶ 32), that its investigations of Defendant revealed that they are using Shopify and Amazon to sell their products, (*Id.* ¶ 50), Plaintiff's identification of Defendant's seller identification names through Shopify and Amazon, (*id.* ¶ 51), that Plaintiff analyzed Defendant's webpages on Shopify and Amazon and determined that counterfeits of its products were being sold, (*id.* ¶ 57), and that Plaintiff executed test purchases of

Defendant's goods through "the e-commerce store pertaining to each Defendant, (*id.* ¶ 79). Defendant does not contest that the Parties sell through the same online channels.

The undersigned concludes that this factor favors Plaintiff. Both Parties sell through proprietary webstores as well as major e-commerce platforms. However, because the shared channels through which the Parties market their products for sale (i.e., Amazon and other large webstores) are ubiquitous, I accord this factor only moderate weight.

*v.*     *Similarity of Advertising Media*

Plaintiff's sole argument on this factor is that "both parties advertise online." (ECF No. 21 at 7–8) (citing (ECF No. 1 ¶¶ 41, 46, 60, 62, 67, 108); (ECF No. 5-7 ¶¶ 9, 11, 32, 57, 60, 77)).

The cited paragraphs of the Flunder Declaration state that Jetchill sells its products through Amazon and its own website, as well as other authorized distributors, (ECF No. 5-7 ¶ 9), that it sells its products in Florida, (*id.* ¶ 11), that it has "extensively used, advertised, and promoted the FLAVOUR BLASTER Mark in the United States," (*id.* ¶ 32), that it analyzed Defendant's webpages on Shopify and Amazon and determined that counterfeits of its products were being sold, (*Id.* ¶ 57), a summary of its trademark infringement claim, (*id.* ¶ 60), and that it "continues to have difficulty selling its authentic products online because of the price pressure and price erosion" caused by Defendant's alleged illegal activity, (*id.* ¶ 77).

At the hearing, Plaintiff offered neither testimony nor documentation regarding Defendant's own mode or scale of advertisement. The Parties have not submitted evidence on Defendant's use of advertising media, beyond the undisputed fact that it lists its products on Amazon. Plaintiff, in contrast, demonstrated at the hearing that it spends significant sums on extensive advertising campaigns via social media and at trade shows. Whereas Plaintiff's social media profile includes celebrity cameos, including a TikTok video featuring Taylor Swift and

20

promoting "th[e] Bubble cocktail that Taylor Swift was drinking," (ECF No. 73-16), Plaintiff has not demonstrated that Defendant avails itself of advertising media of similar type, scope, or degree. Based on this showing, the undersigned cannot conclude that the fifth confusion factor—similarity of advertising media—tilts in Plaintiff's favor.

<em>vi.    Defendant's Intent</em>

Plaintiff's briefing on this factor lacks citation to any evidence. Instead, Plaintiff states its conclusion that Defendant infringed and adopted Plaintiff's mark "with the intent of obtaining benefit from the plaintiff's business reputation." (ECF No. 21 at 8) (citation omitted). Plaintiff states that Defendant's "clear-cut copying and infringement here to sell counterfeit goods" give rise to an inference that they intended to benefit from Plaintiff's reputation and thereby cause Plaintiff reputational and competitive harm. (*Id.*) (citation omitted).

At the hearing, Plaintiff proffered evidence of images of Google search results for the "FLAVOUR BLASTER" and "AROMA BLASTER." The evidence was not ultimately admitted. Mr. Flunder testified based on these images that search returns occasionally mismatched aroma gun products, such that a search return featuring an image of one product would contain a hyperlink to a webpage offering the other product for sale. (ECF No. 77 at 15–16). Or, for example, an aroma gun would be designated, in text, as a Flavour Blaster, but the attendant image would be of "someone else's product." (*Id.*). Plaintiff's counsel proffered, in response to the undersigned's query, that Defendant would have exercised some control over these results and the deficiencies therein. (*Id.* at 15).

This factor favors Defendant. Plaintiff's counsel's proffer, even if taken as true, is speculative: it requires the undersigned to infer an intent to infringe from the fact that Defendant is to some degree capable of influencing Google search results for its products. Absent an

21

additional evidentiary proffer substantiating Mr. Flunder's assertion, the undersigned cannot find Plaintiff's counsel's or Mr. Flunder's testimony sufficient to support a finding that Defendant has consciously manipulated Google search results and therefore demonstrated an intent to infringe Plaintiff's mark.

*vii.    Evidence of Actual Confusion*

Plaintiff makes no claim of evidence of actual confusion in its briefing. Nor do Plaintiff's supportive materials set forth that actual confusion has occurred. Plaintiff instead argues that it "does not need to prove the likelihood of confusion" with such evidence. (*Id.*) (citing *Frehling Enters. v. Int'l Select Grp., Inc.*, 192 F.3d 1330, 1340 (11th Cir. 1999)) (quoted for the proposition that "such evidence is not a prerequisite, and thus it is up to individual courts to assess this factor in light of the particular facts of each case").

Nevertheless, at the hearing, Plaintiff advanced one exhibit apparently demonstrating that actual confusion has occurred: an email from a business customer who contacted Jetchill about procuring a replacement part for its "Explonova Aroma Blaster." Plaintiff advanced the email to show "the irreparable harm [Plaintiff's] brand is suffering." (ECF No. 77 at 73–75). The Court admitted the email into evidence to show the fact that the communication was made. (*Id.* at 75). (ECF No. 73-14). In its Closing Brief, Defendant argues that, "[f]ar from demonstrating confusion, this email actually highlights the customer's awareness of [Defendant's] brand: the sender explicitly references '[the] Explonova Aroma Blaster" and contacts Plaintiff's email address [] only after failing to find the part on Defendant's website." (ECF No. 78 at 3). Defense counsel concludes, from that interpretation, that "[o]ne ambiguous email does not constitute substantial evidence of actual confusion[.]" (*Id.*).

The undersigned agrees with Defendant on this front. Plaintiff's isolated email exhibit does not suffice to demonstrate actual confusion at this early stage of the proceedings. To be entitled to extraordinary, preliminary injunctive relief, Plaintiff must meet its burden to clearly show a likelihood of success on its infringement claim. Plaintiff's Exhibit No. 13 arguably corroborates Defense counsel's suggestion that customers recognize the Aroma Blaster as Explonova's, not Jetchill's, product. *See* (ECF No. 73-13 at 2) (reflecting customer review of the Aroma Blaster that refers to the reviewing customer's "first experience with the ExploNova brand").

To the extent that Plaintiff considers the Google search results as indicative of actual confusion, it has likewise not substantiated its proffer that erroneous search returns have resulted in actual confusion among its consumers.

*          *          *

As indicated above, Defendant's first argument against Plaintiff's trademark claim is that its use of the words "flavour/flavor" and "blaster" constitutes descriptive fair use. (ECF No. 51 at 5–7). Defendant asserts that it is free to use a trademarked "name, term, or device" because it "can demonstrate that such use 'is descriptive of and used fairly and in good faith only to describe the goods or services of [Defendant].'" (*Id.* at 6) (citing *KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.*, 543 U.S. 111, 124 (2004) (cited for the proposition that a party asserting fair use under 15 U.S.C. § 1115(b)(4) "has no independent burden to negate any likelihood in raising the affirmative defense that a term is used descriptively, not as a mark, fairly, and in good faith")).

The core of Defendant's argument is that both the words "flavour" and "blaster" are descriptive in nature when applied to the product at issue: a bubble gun that produces bubbles filled with fragrant smoke. (ECF No. 51 at 6). Defendant accordingly relies on Dictionary definitions of "flavour" and "blaster." (*Id.* at 6–7). Further, Defendant contends that its use of two

23

spellings: the British "flavour" and the American "flavor" in describing their products "indicates that Defendant has no intention of using "flavour/flavor" as a source-identifying mark." (*Id.*).

In its Reply, Plaintiff counters Defendant's fair use defense in its own linguistics-based terms. (ECF No. 56 at 4–5). Plaintiff makes scientific claims about the sensory overlap of flavors and aromas, concluding without citing to any factual or legal authority that "[d]evices described as 'blasters' for either flavor or aroma will likely deliver related sensory effects," and that "distinction between the claimed functions of 'flavor' and 'aroma' blasters" is therefore blurred. *(Id.* at 6–7). Plaintiff contends that because both Plaintiff's and Defendant's products utilize the format "[Descriptive Term] BLASTER," and because humans' senses of taste and smell overlap, the risk of confusion for consumers searching or referring to these products is heightened. (*Id.* at 4). Finally, Plaintiff argues that Defendant's fair use defense is unavailing because Defendant's use of the British English spelling of "flavour," and inclusion of the descriptive term "Blaster" indicate an intent to mimic Plaintiff's mark.

Defendant's second defense follows from the first: Defendant contends that when Explonova *does* use the descriptive words "flavour/flavor" or "blaster," their "registered trademark 'Explonova' always appears in a more prominent manner." (*Id.* at 7). In its closing brief, Defendant renews this argument with reference to exhibits admitted at the October 23 hearing. (ECF No. 78 at 2–3) ("Defendants' products, as shown in [(ECF No. 73-15)] (screenshots of the Explonova Amazon storefront), prominently feature the distinctive "Explonova" mark—with "E" and "N" capitalized in bold red lettering—front and center. This clear source identifier appears repeatedly: in the logo, product titles, and descriptions.").

The undersigned finds persuasive Defendant's second defense, that the prominent display of its brand name and logo mitigates Plaintiff's showing of a likelihood of confusion. Accordingly,

I do not reach Defendant's fair-use defense[3] and instead find that Plaintiff has failed to meet its high burden to demonstrate a likelihood of success on the merits.

In the trademark infringement context, "a distinctive logo's application can . . . be significant evidence that there will be no consumer confusion as to a product's source, and therefore no infringement." *Columbia Sportswear N. Am., Inc. v. Seirus Innovative Accessories*, 80 F.4th 1363, 1382–83 (Fed. Cir. 2023) (collecting cases); *Grubhub Inc. v. Kroger Co.*, No. 21-cv-05312, 2022 WL 2774986, at *4 (N.D. Ill. May 25, 2025) ("It is well established that prominent display of different brand names with marks reduces the likelihood of confusion, 'even where . . . the marks are otherwise similar.'") (quoting *Ziebart Int'l Corp. v. After Mkt. Assocs.*, 802 F.2d 220, 227 (7th Cir. 1986)), *aff'd*, 80 F.4th 835 (7th Cir. 2023); *see also Guantanamera Cigars Co. v. SMCI Holding, Inc.*, No. 21-cv-21714, 2023 WL 3781628, at *7 (S.D. Fla. Jun. 2, 2023) (finding that Plaintiff failed to establish a likelihood of confusion where, *inter alia*, alleged infringer's conspicuous and repeated use of its brand name "strongly mitigate[d] against confusion as to the source of the goods"). As the Eleventh Circuit has explained, "[i]f a trademark operates in a crowded field of 'similar marks on similar goods or services,' slight differences in names may be meaningful because consumers 'will not likely be confused between any two of the crowd and may have learned to carefully pick out one from the other.'" *Fla. Int'l Univ. Bd. Of Trustees v. Fla. Nat'l Univ., Inc.*, 830 F.3d 1242, 1260 (11th Cir. 2016) (quotation omitted). Granted, two marks need not be identical to support a finding of infringement; "the key question remains whether the marks are sufficiently similar 'to deceive the public.'" *Id; see Vital Pharms., Inc. v. Monster Energy Co.*, 553 F. Supp. 3d 1180, 1264–65 (S.D. Fla. Aug. 3, 2021) (finding "widespread confusion is unlikely" where, "[s]tarting with the obvious, both drinks prominently display their names and

---

[3] The undersigned does find the substance of Defendant's fair-use defense probative in the analysis, as set forth above, of the strength of Plaintiff's "FLAVOUR BLASTER" mark.

logos, and [one party's] and [] logo look and sound nothing like [the other party's] name and [] logo").

Both parties prominently display their brand names and logos on their respective aroma gun products. At the hearing, Defense counsel elicited acknowledgement from Mr. Flunder that Plaintiff's Flavour Blaster products bear Plaintiff's stylized product logo, (ECF No. 77 at 92–93),[4] whereas Defendant prominently displays its "EXPLONOVA" brand name and logo on its packaging and product, (*id.* at 93). Plaintiff's Exhibit No. 8 does indeed depict the prominent display of Plaintiff's marks and brand logo on its product kit. (ECF No. 73-8). Based on Plaintiff's evidence advanced at the hearing, which includes contrasting images of Defendant's and its webstore listings, (ECF Nos. 73-13, 73-15, 73-18), a consumer surveying aroma guns will encounter images of the aroma guns alongside their packaging and, hence, with the products' distinct brand names and logos in plain view. Defendant's prominent display of its source, brand name, and logo, mitigates the likelihood of confusion on these facts. *See Guantanamera Cigars*, 2023 WL 3781628, at *7.

Plaintiff's claim of trademark infringement represents a close call. With Defendant's prominent display of its brand name and logo considered alongside the seven factors analyzed above, the undersigned concludes that any confusion otherwise likely to arise from Defendant's marketing of the AROMA BLASTER is lessened. At this early stage in these proceedings, Plaintiff has not met its evidentiary burden to show that Defendant's product is likely to cause confusion. Therefore, Plaintiff has not demonstrated likelihood of success on the merits of its trademark infringement claim. Accordingly, with respect to that claim, the undersigned need not consider the

---

[4] Earlier at the hearing, Mr. Flunder volunteered that the strength of the "FLAVOUR BLASTER" mark was supported by the fact that "it's clearly branded," and "has got a logo on [it]." (ECF No. 77 at 33).

26

remaining factors in the preliminary injunction test. *See GeorgiaCarry.Org, Inc. v. U.S. Army Corps of Eng'rs*, 788 F.3d 1318, 1329 (11th Cir. 2015).

>         **2.**     **Plaintiff has Met its Burden to Demonstrate a Substantial Likelihood of Success on the Merits of its Design Patent Claim**

Plaintiff claims that Defendant's aroma gun infringes its design patent under the "ordinary observer test," *i.e.*, that "in the eye of an ordinary purchaser, giving such attention as a purchaser usually gives, [Plaintiff's and Defendant's] two designs are so similar that the purchaser, familiar with the prior art, would be deceived by the similarity between the claimed design and the accused designs, inducing him to purchase one supposing it to be the other." (ECF No. 21 at 8–9) (citing *Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 684 (Fed. Cir. 2008) (en banc)). Plaintiff argues that the ornamental designs of Plaintiff's aroma gun and Defendant's aroma gun, considered as a whole, are deceptively similar to the ordinary observer. Plaintiff relies, again, on the Flunder Declaration and attached screen capture exhibits therein. (ECF No. 21 at 9) (citing (ECF No. 5-7 ¶ 56–58, Ex. 1); (ECF No. 1 Ex. 4)).

In its Response, Defendant notes that its product design holds a valid and enforceable U.S. design patent and that Defendant has obtained a license for this patent. (ECF No. 51 at 7) (citing Declaration of Rui Guo, (ECF No. 38-1 ¶ 7); (ECF No. 38-4)). Defendant further argues that the ordinary observer comparison favors a finding of noninfringement. (ECF No. 51 at 8–11). In contrast to Plaintiff's assessment of the product as a whole, Defendant highlights discrete differences between the two product designs: Differences in the products' (a) upper body, (b) handle design, and (c) base.

Plaintiff replies that Defendant misconstrues the ordinary observer test, which per Plaintiff "'requires the fact finder to "compar[e] similarities in overall designs, not similarities of

ornamental features in isolation."' (ECF No. 56 at 10) (quoting *Lanard Toys, Ltd. v. Dolgencorp LLC*, 958 F.3d 1337, 1343 (Fed. Cir. 2020)).

"Determining whether a design patent has been infringed is a two-part test: (1) the court first construes the claim to determine its meaning and scope; [and] (2) the fact finder then compares the properly construed claim to the accused design." *Acufloor, LLC v. Eventile, Inc.*, No. 21-cv-802, 2022 WL 861575, at *3 (M.D. Fla. Mar. 23, 2022) (quoting *Lanard Toys*, 958 F.3d at 1341).

Regarding the first step of the test, the Parties do not affirmatively argue or request claim construction. "A district court has no obligation to definitively construe claims at the preliminary injunction stage." *Natera, Inc. v. NeoGenomics Lab'ys, Inc.*, 106 F.4th 1369, 1375 (Fed. Cir. 2024) (citing *Sofamor Danek Grp., Inc. v. DePuy-Motech, Inc.*, 74 F.3d 1216, 1221 (Fed. Cir. 1996) (holding that district court did not commit an abuse of discretion "by not engaging in explicit claim construction before evaluating the likelihood of [patent] infringement") ("This is undoubtedly true here, where the parties did not present a claim construction dispute.")); *see also Ultimate Combustion Co., Inc. v. Fuecotech, Inc.*, No. 12-60545-CV, 2013 WL 12091158, at *3 (S.D. Fla. Nov. 4, 2013) ([A] trial court has no obligation to interpret [a] claim [] conclusively and finally during a preliminary injunction proceeding . . . . [Rather], [a] trial court may exercise its discretion to interpret the claims at a time when the parties have presented a full picture of the claimed invention and prior art.") (quoting *Sofamor*, 74 F.3d at 1221)); *cf. Fusilamp, LLC v. Littelfuse, Inc.*, No. 10-20528-CIV, 2010 WL 3446913, at *3 (S.D. Fla. Aug. 31, 2010) (holding that while the Court need not determine the scope of the patent claims conclusively at the preliminary injunction stage, "a district court must 'make an assessment of the persuasiveness of the challenger's evidence, recognizing that it is doing so without all evidence that may come out at trial'") (citation omitted).

28

Absent any dispute over claim construction, the words of a claim "are generally given their ordinary and customary meaning." *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996). "[T]he ordinary and customary meaning of a claim term is the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention, i.e., as of the effective filing date of the patent application." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1313 (Fed. Cir. 2005).

The Parties agree that the "ordinary observer" test, as clarified by the Federal Circuit's decision in *Egyptian Goddess*, governs the Court's analysis here. The Parties disagree as to how that test proceeds. It is true that, under *Lanard Toys*, "the 'ordinary observer' test for design patent infringement requires the fact finder to 'compar[e] similarities in overall designs, not similarities of ornamental features in isolation.'" *See* 958 F.3d at 1343. On the other hand, under *Egyptian Goddess*, "the ordinary observer is deemed to view the differences between the patented design and the accused product *in the context of the prior art*." *Egyptian Goddess*, 543 F.3d at 676. This is because when the differences between the claimed and accused design are viewed in such light, "the attention of the hypothetical ordinary observer will be drawn to those aspects of the claimed design that differ from the prior art." *Id.* ("[W]hen the claimed design is close to the prior art designs, small differences between the accused design and the claimed design are likely to be important to the eye of the hypothetical ordinary observer."); *see also Delta T, LLC v. Dan's Fan City, Inc.*, No. 19-cv-1731, 2021 WL 2284134, at *3 (M.D. Fla. Jun. 4, 2021) (same) (quoting *Lanard Toys*, 958 F.3d at 1344) (additional quotation omitted)). The key criterion is whether the ordinary observer would be deceived so as to confuse the claimed design with the accused product. *See Shenzhen Z Tech Co. Ltd. v. Partnerships & Unincorporated Ass'ns Identified on Schedule A*, No. 25-cv-21474, 2025 WL 3840693, at *2 (S.D. Fla. Oct. 3, 2025) (citation omitted).

Defendant submitted several exhibits at the hearing, each of which depicts a design patent registered prior to Plaintiff's registration of its own, and each of which represents a device that creates smoke or vapor-filled bubbles. *See* (ECF Nos. 78-2–5). While there is some functional overlap between certain of the exhibits and Plaintiff's product, courts are instructed to disregard functional similarities and instead focus on ornamental similarities among products during the design patent analysis. *See Richardson v. Stanley Works, Inc.*, 597 F.3d 1288, 1293–94 (Fed. Cir. 2010) ([A] design patent, unlike a utility patent, limits protection to the ornamental design of the article."). From an ornamental standpoint, and without the benefit of a full evidentiary record, the undersigned sees little resemblance between Plaintiff's product and the prior art advanced by Defendant. The closest resemblance is borne by the Fusco design patent, which resembles a two-handed toy power drill. *See* (ECF No. 78-2). The undersigned limits its analysis of Plaintiff's and Defendant's products accordingly—the attention of the hypothetical ordinary observer, here, will be drawn to those aspects of Plaintiff's aroma gun that differ from the Fusco patent's design. *See Egyptian Goddess*, 543 F.3d at 676.

Even with the analysis thus cabined, however, the overall "looks" of Plaintiff and Defendant's respective aroma guns are remarkably similar. On this front, the undersigned credits the testimony of Mr. Flunder, who, while not an ordinary observer, credibly testified as to the intended Flavour Blaster's "theatrical," "Sci-Fi," and "Star Wars" look. (ECF No. 77 at 139). The Court observed at the close of the hearing that "[t]he theater of the device" is that it is meant "to be used in front of patrons, not applied in the back" of a given business consumer's venue. (*Id.*).

Defendant's aroma gun bears a strong overall resemblance to Plaintiff's. *Compare* (ECF No. 73-8), *to* (ECF No. 73-13). Both products resemble handheld guns with a sleek, matte finish. Each features a flat base, a single handle, and a bulbous top from which a nozzle protrudes. From

an ordinary observer's standpoint, each embodies the "Sci-Fi" aesthetic that Mr. Flunder characterizes as the Flavour Blaster's core aesthetic trait. Finally, although it did not suffice as evidence of confusion for purposes of Plaintiff's trademark claims, the undersigned notes the fact of the email communication sent to Plaintiff on September 22, 2025, (ECF No. 73-14) as support for the proposition that the Parties market their goods to at least one common consumer. The undersigned concludes that a reasonable observer in that customer's shoes, viewing the products, themselves, in isolation, could be deceived into thinking that Defendant's product embodies Plaintiff's claimed design. *See Shenzhen Z Tech Co.*, 2025 WL 3840693, at *2.

While Defendant identifies distinguishing adornments among the two products, (ECF No. 77 at 98, 101–104), these constitute minor deviations from the overall ornamental design before the Court. Absent a showing otherwise, which with the benefit of further discovery Defendant may well attempt to make, the undersigned concludes that a hypothetical ordinary observer familiar with the prior art advanced by Defendant would fixate less on those minor deviations and more on the "Star Wars" blaster look as a whole.

Defense accurately challenged Mr. Flunder's testimony because he is not an ordinary observer. (*Id.* at 139–40). Discovery may yet yield different information. At this early stage of the proceedings, requiring an overly robust evidentiary proffer supporting Plaintiff's claim under the ordinary observer test would place preliminary injunctive relief out of reach of design patent plaintiffs for whom preliminary injunctive relief must be attainable. Accordingly, the undersigned concludes that Plaintiff has met its burden to show a likelihood of success on the merits of its design patent infringement claim. Both Parties' products share a futuristic "gun" design that Plaintiff highlights as the Flavour Blaster's aesthetic anchor. An ordinary observer choosing

amongst the two products with awareness of the prior art, could reasonably be deceived into believing that Defendant's Aroma Blaster manifests Plaintiff's design.

> 3.      **Plaintiff has Met its Burden to Demonstrate a Substantial Likelihood of Success on the Merits of its Utility Patent Claim**

Utility patent infringement involves a two-step process where first the claim language is interpreted as a matter of law, and second, the accused device is compared to the interpreted claim to determine infringement as a question of fact. *Markman v. Westview Instruments, Inc.*, 52 F.3d 967 (Fed. Cir. 1995); *Read Corp. v. Portec, Inc.*, 970 F.2d 816, 821–22 (Fed. Cir. 1992). There is literal infringement where the accused device contains all of the limitations specified in a patent claim. *Read Corp.*, 970 F.2d at 821. Under the doctrine of equivalents, infringement may be found where an accused product performs substantially the same overall function or work, in substantially the same way, to obtain substantially the same overall result as the claimed invention. *See Graver Tank & Mfg. Co. v. Linde Air Prod. Co.*, 339 U.S. 605 (1950); *see also Perkin-Elmer Corp. v. Computervision Corp.*, 732 F.2d 888, 901 (Fed. Cir. 1984); *Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 39 (1997) (the function-way-result test ("triple identity" test) is one means of finding equivalency, although other evidence may also be relevant to show the substantiality of the differences).

Plaintiff argues that, under the "triple-identity" test, Defendant's goods perform substantially the same function substantially the way to obtain the same result as Plaintiff's Utility Patent. (ECF No. 21 at 10). That is, Defendant's aroma gun consists of a device for:

> creating a vapour filled bubble, comprising a dispensing nozzle including a liquid retention formation for assisting bubble creation; an air displacement element; a vapour producing means comprising a source of vapour producing liquid and a means for heating the liquid; wherein the air displacement element is arranged to provide airflow through the vapour producing means to produce vapour for delivery to the dispensing nozzle, providing a system for the creation of vapour filled bubbles to accompany refreshments.

32

(ECF No. 5-8). Defendant does not assert that the Aroma Blaster performs a different function, functions in a different way, or is designed to produce a different result than the Flavour Blaster. Defendant instead asserts affirmative defenses that Plaintiff's utility patent is invalid for obviousness or, alternatively, as a result of Plaintiff's inequitable conduct.

A patent is presumed valid. 35 U.S.C. § 282. Invalidity must be proven by clear and convincing evidence. *See ActiveVideo Networks, Inc. v. Verizon Commc'ns, Inc.*, 694 F.3d 1312, 1327 (Fed. Cir. 2014) (citing *Microsoft Corp. v. i4i Ltd.*, 591 U.S. 91, 98–100 (2011)).

"Obviousness is a question of law based on underlying factual inquiries including: (1) the scope and content of the prior art; (2) the level of ordinary skill in the art; (3) the differences between the prior art and the claimed invention as perceived before the time of invention; and (4) the extent of any objective indicia of non-obviousness." *Rolls–Royce, PLC v. United Techs. Corp.*, 603 F.3d 1325, 1338 (Fed. Cir. 2010) (citing *Monarch Knitting Mack Corp. v. Sulzer Morat GmbH*, 139 F.3d 877, 881 (Fed. Cir. 1998)). While obviousness is a question of law, it is "the disputed facts underlying the legal conclusion [that] must be established by clear and convincing evidence." *See Nutrition 21 v. United States*, 930 F.2d 867, 871 (Fed. Cir. 1991) (quoting *Newell Cos. v. Kenney Mfg. Co.*, 864 F.2d 757, 767 (Fed. Cir. 1988)) (cleaned up). "If a person of ordinary skill, before the time of invention and without knowledge of that invention, would have found the invention merely an easily predictable and achievable variation or combination of the prior art, then the invention likely would have been obvious." *Rolls–Royce, PLC*, 603 F.3d at 1338 (citing *KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 417, 421 (2007)).

Defendant argues that several prior arts identified during Plaintiff's original patent application process in the United Kingdom, "indicating lack of novelty or inventive step," went undisclosed by Plaintiff in the U.S. patent application over which Plaintiff claimed priority.

Beyond these prior arts themselves, Defendant has advanced no further evidence to demonstrate obviousness by clear and convincing evidence. *See ActiveVideo Networks, Inc.*, 694 F.3d at 1327. To make a finding with respect to Defendant's obviousness defense, the undersigned would need to speculate, from an undeveloped record, as to each of the factual inquiries underlying that legal finding. *See Rolls–Royce, PLC*, 603 F.3d at 1338. At this early stage of the litigation, and cognizant that Defendant must prove its affirmative defense under a heightened evidentiary standard, the undersigned cannot find that Defendant's obviousness defense undermines Plaintiff's claim of utility patent infringement.

Defendant also raises the affirmative defense of inequitable conduct. "Inequitable conduct may be found when a patentee or his attorney breaches [its] duty of disclosure by failing to disclose material information with the intent to mislead or deceive." *Levenger Co. v. Feldman*, 516 F. Supp. 2d 1272, 1284 (S.D. Fla. 2007) (citing *Molins PLC v. Textron, Inc.*, 48 F.3d 1172, 1178 (Fed. Cir. 1995)). The challenger must prove two prongs: (1) that the information withheld was material and (2) that the withholding was done with an intent to deceive. *Id.* An accused infringer raising the defense "must prove that the patentee acted with the specific intent to deceive the PTO." *Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276, 1290 (Fed. Cir. 2011) ("[T]he accused infringer must prove by clear and convincing evidence that the applicant knew of the reference, knew that it was material, and made a deliberate decision to withhold it."). "When an applicant fails to disclose prior art to the PTO, that prior art is but-for material if the PTO would not have allowed a claim had it been aware of the undisclosed prior art." *Id.* at 1291.

Defendant argues that Plaintiff's patent is unenforceable or void because Plaintiff intentionally failed to disclose prior art to the USPTO and is therefore guilty of inequitable conduct with respect to its utility patent. Defendant has advanced neither evidence nor testimony as to the

intent prong or materiality prongs of the inequitable conduct test. Absent such a showing, the undersigned cannot credit Defendant's argument that Plaintiff's utility patent is invalid.

Defendant does not otherwise dispute Plaintiff's core utility patent infringement claim. The undersigned accordingly finds that Plaintiff has demonstrated a substantial likelihood of success on the merits of the claim.

### D.    Irreparable Harm

As set forth above, the undersigned finds that Plaintiff has met its burden to clearly show a likelihood of success on its design and utility patent infringement claims. In trademark infringement cases, "a sufficiently strong showing of likelihood of confusion . . . may by itself constitute a showing of a substantial threat of irreparable harm." *McDonald's Corp. v. Robertson*, 147 F.3d 1301, 1306 (11th Cir. 1998). As discussed above, however, Plaintiff has not met its burden to clearly show, at this early stage of the proceedings, that it is likely to succeed on the merits of its trademark claim. For entry of a preliminary injunction to be proper, Plaintiff must clearly demonstrate that, absent preliminary injunctive relief, it will suffer irreparable harm—that is, harm not compensable through monetary relief. *See Adams Arms, Inc. v. Sig Sauer, Inc.*, No. 10-CV-146, 2010 WL 3119777, at *16 (M.D. Fla. Aug. 2, 2010) (quoting *Canon, Inc. v. GCC Int'l Ltd.*, 263 F. App'x 57, 62 (Fed. Cir. 2008) (citing Dan B. Dobbs, Law of Remedies 193–94 (2d ed. 1993)).

Irreparable harm is the "*sine qua non*" of injunctive relief." *Siegel v. Lepore*, 234 F.3d 1163, 1176 (11th Cir. 2000) (quoting *Northeastern Fla. Chapter of Ass'n of Gen. Contractors v. City of Jacksonville*, 896 F.2d 1283, 1285 (11th Cir. 1990)). Even when movants establish a likelihood of success on the merits, the absence of a substantial likelihood of irreparable injury renders preliminary injunctive relief improper. *See Siegel*, 234 F.3d at 1176 (citing *Snook v. Trust Co. Of Georgia Bank of Savannah, N.A.*, 909 F.2d 480, 486 (11th Cir. 1990) (affirming denial of a

preliminary injunction even though plaintiff established a likelihood of prevailing because plaintiff failed to meet its burden of showing a substantial likelihood of irreparable injury)); *see also Hernandez v. Stingray Grp., Inc.*, No. 24-cv-21226, 2025 WL 2263629, at *6 (S.D. Fla. Mar. 10, 2025).

Plaintiff argues that "[a] showing of infringement of a valid patent creates a presumption of irreparable harm, because 'the very nature of a patent provides the right to exclude.'" (ECF No. 80 at 10) (quoting *Pass & Seymour, Inc. v. Hubbell Inc.*, 532 F. Supp. 2d 418, 432 (N.D.N.Y. 2007) (quoting *Pfizer, Inc. v. Teva Pharms., USA, Inc.*, 429 F.3d 1364, 1381 (Fed. Cir. 2005))). The Federal Circuit has indeed held that "[a] strong showing of likelihood of success on the merits coupled with continuing infringement raises a [rebuttable] presumption of irreparable harm to the patentee." *Reebok Intern. Ltd. v. J. Baker, Inc.*, 32 F.3d 1552, 1556 (Fed. Cir. 1994). However, in *eBay Inc. v. MercExchange, L.L.C.*, the Supreme Court rejected application of this categorical presumption. *See* 547 U.S. 388, 392 (2006) (holding that plaintiffs alleging patent infringement "must satisfy" the four-factor test before a court may grant permanent injunctive relief); *see also N. Am. Med. Corp. v. Axiom Worldwide, Inc.*, 522 F.3d 1211, 1228 (11th Cir. 2008) ("[N]o obvious distinction exists between permanent and preliminary injunctive relief to suggest that *eBay* should not apply to the latter."). Instead, *eBay* requires that the Court apply "the traditional four-factor framework that governs the award of injunctive relief." *eBay*, 547 U.S. at 394; 35 U.S.C. § 283. Since *eBay* was decided, the Federal Circuit "put the question to rest and confirm[ed] that *eBay* jettisoned the presumption of irreparable harm as it applies to determining the appropriateness of injunctive relief." *Robert Bosch LLC v. Pylon Mfg. Corp.*, 659 F.3d 1142, 1148 (Fed. Cir. 2011). Courts in this Circuit have held that "a presumption of irreparable harm in a preliminary injunction is inconsistent with" *eBay* and *Bosch. Atleisure, Inc. v. Ace Evert Inc.*, No. 12-CV-1260, 2013 WL

12099363, at *7 (N.D. Ga. Jun. 6, 2013); *see also Tiber Labs., LLC v. Hawthorn Pharms., Inc.*, 527 F. Supp. 2d 1373, 1380 (N.D. Ga. 2007); *Design Pallets, Inc. v. Shandon Valley Transp. Sols. USA, LLC*, No. 12-cv-669, 2012 WL 12883525, at *4 (M.D. Fla. Jun. 7, 2012); *Peach State Labs, Inc. v. Env't Mfg. Sols., LLC*, No. 09-cv-395, 2011 WL 13140668, at *2–3 (M.D. Fla. Aug. 12, 2011).

The undersigned interprets *eBay* and its progeny to require that a preliminary injunction movant demonstrate something more than intrusion upon the right to exclude. Granting injunctive relief merely upon a showing that the right to exclude is under threat would be tantamount to applying the presumption of irreparably injury squarely rejected by the *eBay* Court. *See eBay*, 547 U.S. at 392 (reversing Court of Appeals' holding that the "statutory right to exclude alone justifies its general rule in favor of permanent injunctive relief," reasoning that "the creation of a right is distinct from the provision of remedies for violations of that right"); *see also id.* ("[T]he Patent Act expressly provides that injunctions 'may' issue 'in accordance with the principles of equity.'") (quoting 35 U.S.C. § 283); *Atleisure, Inc.*, 2013 WL 12099363, at *7 (rejecting argument that the demonstrated existence of a likely infringer automatically demonstrates irreparable harm after *eBay*) ("The 'existence of a likely infringer' is essentially the same as saying there is a likelihood of success on the merits of a patent infringement claim, and the court has already held such a finding *cannot* give rise to a presumption of irreparable harm.") (citation omitted).

Upon fulsome review of the Parties' filings, the evidence proffered at the evidentiary hearing, and the testimony given thereupon, the undersigned cannot conclude that Plaintiff has met its burden to clearly show that it will be irreparably harmed absent issuance of an injunction. Plaintiff's claim of irreparable injury turns primarily on its trademark claim; that is, Plaintiff asserts that its brand reputation and goodwill have been and will be undermined by Defendant's marketing

of the Aroma Blaster. (ECF No. 80 at 9). As discussed *supra*, however, Plaintiff has not met its burden to show that it has a likelihood of success on the merits of its trademark claim precisely because it has not sufficiently demonstrated a likelihood of confusion for purposes of a preliminary injunction. While Mr. Flunder testified generally as to consumer confusion, and Plaintiff asserts that it has "suffered price erosion," in the form of consumer demands for "deeper discounts as counterfeits reduced prices," (ECF No. 80 at 9), Plaintiff submitted no evidence thereof. Plaintiff acknowledges that "Explonova's aroma gun entered the market July 2023." (*Id.* at 9). Yet the lone evidence advanced in support of its assertions of confusion was Plaintiff's Exhibit No. 14, which, as Defendant points out, (ECF No. 78 at 3), is ambiguous as to confusion. *See* (ECF No. 73-14).

The remainder of Plaintiff's argument centers on harm to lost sales and increased expenditures attributable, per Plaintiff, to Defendant's infringement. *See* (ECF No. 80). For these factors to support a finding of irreparable harm, Plaintiff must advance evidence justifying "a finding that the competitor's infringing features drive consumer demand for its products[.]" *See Apple Inc. v. Samsung Elecs. Co., Ltd.*, 809 F.3d 633, 640 (Fed. Cir. 2015) ("[A] causal nexus linking the harm and the infringing acts must be established[.]"); *see also id.* at 641 ("When a patentee alleges it suffered irreparable harm stemming from lost sales solely due to a competitor's infringement, a finding that the competitor's infringing features drive consumer demand for its products satisfies the causal nexus inquiry.").

At the hearing, Mr. Flunder testified as to his personal knowledge of a drop-off in sales revenues. *See* (ECF No. 77 at 43). As for expenditures resulting from suspected infringement, Mr. Flunder further testified that before Jetchill "saw the copycats," its annual spend on paid advertisements totaled approximately £250,000, whereas its current annual spend is roughly double that figure. (ECF No. 77 at 42); *see also* (ECF No. 80 at 9) ("Plaintiff has been forced to

dramatically increase its spend on marketing to counter the effects of infringers like Explonova."). These appear to be compensable harms, absent some showing by Plaintiff that Defendant's infringement has taken market share or actually harmed Defendant's business reputation. The Court is wary of affording more than limited probative value to Mr. Flunder's testimony that these harms are "irreparable." "Conclusory statements by an officer of the moving party of limited probative value." *Atleisure, Inc.*, 2013 WL 12099363, at *8 ("'Conclusory statements by an officer of the moving party are of limited probative value. More than a simple recitation of the threat, [the plaintiff] must present specific 'credible and admissible evidence[.]'") (quotation and marks omitted).

Plaintiff separately asserts that it "suffered price erosion." (ECF No. 80 at 9). The Flavour Blaster retails at a premium price point of $500; Mr. Flunder testified that this price point was selected because it "is a bit like having an Apple iPhone [in that] people pay because they know they are getting the brand and quality." (ECF No. 77 at 72). Mr. Flunder further testified that Jetchill had "been forced to offer some discounts" from its standing price point "because of the copycats." (*Id.* at 125). Plaintiff's counsel testified as to his personal awareness "that there are hundreds of infringers of this product selling on Amazon and elsewhere." (*Id.* at 136). Plaintiff has not set forth a basis on which to find that the price erosion to which Mr. Flunder testified—further evidence of which Plaintiff has not advanced—exists in a causal nexus with Defendant's marketing and sale of its product. *See Apple Inc. v. Samsung Elecs. Co., Ltd.*, 809 F.3d 633, 640 (Fed. Cir. 2015). Indeed, Plaintiff's Exhibit No. 13 suggests that the Aroma Blaster is primarily marketed towards a consumer market distinct from the Flavor Blaster's. *Compare* (ECF No. 73-13) (marketing the Aroma Blaster as "[p]erfect for bar counters, outdoor picnics, and family gatherings"), *to* (ECF No. 77 at 63) ("[The Flavour Blaster] is known by big companies such as

your Disneys and your Hiltons and your Marriotts and people like that.") *and* (ECF No. 77 at 30) ("[The Flavour Blaster] is used by all types of hospitality venues; whether it is restaurants, bars, clubs, hotels, all the way from small bars, maybe, that hold 20 people all the way up to multinational companies[.]").

Defendant maintains, in its Closing Brief, that Plaintiff has inadequately demonstrated irreparable injury because "Mr. Flunder's testimony provided no quantifiable data on lost sales, market share erosion, or reputational damage tied to Defendant's design; instead, any alleged losses (e.g., diverted sales) are fully compensable through monetary damages based on sales records." (ECF No. 78 at 7). While the undersigned does not agree that submission of such data is a prerequisite to establishing irreparable harm, I do note the absence of such evidentiary submissions from Plaintiff's evidentiary proffer.

Further weighing against a finding of irreparable harm in the Court's current posture, the undersigned notes this Circuit's rule that "[a] delay in seeking a preliminary injunction of even only a few months—though not necessarily fatal—militates against a finding of irreparable harm." *Wreal, LLC v. Amazon.com, Inc.*, 840 F.3d 1244, 1248 (11th Cir. 2016) (citations omitted). Whereas Plaintiff first learned of Defendant's alleged infringement on its patent and trademark rights "sometime in early 2023," (ECF No. 77 at 110), it opted not to pursue relief in federal court until the filing of the Illinois action in November 2024, (ECF No. 80-2). And Plaintiff proffers that it did not investigate its utility patent claim until the summer of 2025, after the Illinois action had been dismissed for improper joinder in March 2025. (ECF No. 80-1 at 4). This delay was notwithstanding that Plaintiff was on notice Defendant was marketing an aroma gun similar to its own and advertised for mixology use at the time it brought the Illinois action. The undersigned finds that Plaintiff's delays—both in bringing the Illinois action after learning of Defendant's

product and in bringing its utility patent claim—cut against its assertion of irreparable harm. Under the totality of the circumstances, and in light of the evidence advanced at the October 23 hearing, the undersigned cannot conclude that Plaintiff has met its burden "to demonstrate an imminent injury that would warrant the 'extraordinary and drastic remedy' of a preliminary injunction." *See Wreal, LLC*, 840 F.3d at 1248–49 (citations omitted). Accordingly, Plaintiff's Motion for Preliminary Injunction, (ECF No. 21), is due to be denied. *See Siegel*, 234 F.3d at 1176.

## IV.   CONCLUSION

For the foregoing reasons, the undersigned respectfully **RECOMMENDS** that Jetchill's Motion for Preliminary Injunction, (ECF No. 21), be **DENIED**.

A party shall serve and file written objections, if any, to this Report and Recommendations with the Honorable David S. Leibowitz, United States District Judge for the Southern District of Florida, within **FOURTEEN (14) DAYS** of being served with a copy of this Report and Recommendation.  Failure to timely file objections will bar a *de novo* determination by the District Judge of anything in this recommendation and shall constitute a waiver of a party's "right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions."  11th Cir. R. 3-1 (2016); 28 U.S.C. § 636(b)(1); *see also Harrigan v. Metro-Dade Police Dep't Station #4*, 977 F.3d 1185, 1191–92 (11th Cir. 2020).

**RESPECTFULLY SUBMITTED** in Chambers at Miami, Florida, this 26th day of November, 2025.

_____
LAUREN F. LOUIS
UNITED STATES MAGISTRATE JUDGE