UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 1:25-cv-23377-DSL

JETCHILL LTD,

  Plaintiff,

v.

SHENZHEN JIARUI MINGHUI
TRADING CO., LTD., and
EXPLONOVA STORE,

  Defendants.

_____/

**REPORT AND RECOMMENDATIONS**

  **THIS CAUSE** is before the Court upon Plaintiff Jetchill Ltd's ("Jetchill" or "Plaintiff")

Motion for Default Judgment, (ECF No. 93). This matter was referred to the undersigned by the

Honorable David S. Leibowitz, United States District Judge, for a Report and Recommendations.

(ECF No. 94). The undersigned convened an evidentiary hearing on Plaintiff's Motion on March

20, 2026. (ECF No. 101). Having reviewed the Motion, Plaintiff's oral and evidentiary proffer at

the March 20 Hearing, and the record as a whole, and as set forth below, the undersigned

respectfully recommends that Jetchill's Motion for Default Judgment be **GRANTED**.

**I.  BACKGROUND AND PROCEDURAL HISTORY**

  Plaintiff claims Defendants Shenzhen Jiarui Minghui Trading Co., Ltd. and Explonova

Store (collectively, "Defendant") infringed Plaintiff's federally registered trademark (Registration

number 7,367,037) (the "Mark"), design patent (U.S. Patent No. D960,994 S) (the "Design

Patent") and utility patent (U.S. Patent No. 11,944,994 B2) (the "Utility Patent"). (ECF No. 1).

Together, the Mark and Patents figure into the "Flavour Blaster," Plaintiff's flagship product. The

1

Flavour Blaster is a handheld "aroma gun" used in the beverage-mixing industry to form a visually appealing and aromatic, vapor-filled bubble atop cocktail beverages. Under the "Explonova" brand name, Defendant manufactures, markets, and sells its competing aroma gun product, the "Aroma Blaster," through Amazon, its proprietary website, and other webstores. The Aroma Blaster bears strong resemblance to and performs the same function as Plaintiff's product. It is, Plaintiff claims, an infringing counterfeit of the Flavour Blaster. Plaintiff seeks redress.

To that end, Plaintiff brought the instant action on July 28, 2025. (ECF No. 1). After the Court granted Plaintiff's *ex parte* motion for the issuance of a temporary restraining order enjoining Defendant from the continued marketing and sale of the Aroma Blaster, Defendant appeared. The Parties thereupon heatedly litigated Plaintiff's efforts to extend the TRO's effective period and secure preliminary injunctive relief. Then Defendant's counsel moved to withdraw on November 12, 2025, citing Defendant's "discharge of [its retained counsel] and [ ] inability to continue paying legal fees." (ECF No. 85). The Court granted the motion and ordered Defendant to retain new representation by no later than November 26, 2025, "or face entry of a clerk's default." (ECF No. 86).[1] Defendant has not done so.

Plaintiff moved the Clerk of Court to enter default against Defendant, (ECF No. 90), which motion was granted on December 2, 2025. (ECF No. 91). Plaintiff then filed the instant Motion for Default Judgment. (ECF No. 93). The Motion seeks default judgment on Plaintiff's claims of Trademark Infringement, False Designation of Origin, Trademark Infringement under Florida common law, Utility Patent Infringement, and Design Patent Infringement.[2]

---

[1] Following issuance of the Court's Order and in compliance with same, withdrawn counsel filed a notice certifying that he had sent a copy of the Order to Defendant via email. (ECF No. 87).

[2] Plaintiff does not seek judgment on Count VI of the Complaint, asserting that Defendant violated Florida's Deceptive and Unfair Trade Practices Act.

The undersigned convened an evidentiary hearing on the Motion on March 20, 2026 upon a finding of necessity that Plaintiff present evidence on its damages claim. *See* (ECF No. 99, 101). At the hearing, Plaintiff's counsel took the testimony of Mr. Robert Flunder, Jetchill's director and co-founder. Plaintiff additionally sought to introduce several exhibits into the record; these were admitted and have since been filed on the docket. *See* (ECF No. 102).

## II.     LEGAL STANDARD

A defaulting defendant "admits the plaintiff's well-pleaded allegations of fact" as true. *Buchanan v. Bowman*, 820 F.2d 359, 361 (11th Cir. 1987). Yet the fact of default does not warrant the Court's entry of a default judgment in a movant's favor; there must be a sufficient factual and legal basis in the pleadings for the judgment entered. *Chanel, Inc. v. besumart.com*, 240 F. Supp. 3d 1283, 1288–89 (S.D. Fla. 2016) (citing *Nishimatsu Constr. Co., Ltd. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975)); *see also Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1370 n.41 (11th Cir. 1997) ("[A] default judgment cannot stand on a complaint that fails to state a claim."). Therefore, to grant default judgment the court "must ensure that the well-pleaded allegations of the complaint . . . actually state a cause of action and that there is a substantive, sufficient basis in the pleadings for the particular relief sought." *Tyco Fire & Sec., LLC v. Alcocer*, 218 F. App'x 860, 864 (11th Cir. 2007).

Allegations as to the amount of damages are not deemed admitted by mere virtue of default. *See TracFone Wireless, Inc. v. Anadisk, LLC*, 685 F. Supp. 2d 1304, 1310 (S.D. Fla. 2010) (citation omitted). Rather, "[i]f the facts in the complaint are sufficient to establish liability, then the court must conduct an inquiry to ascertain the amount of damages." *PetMed Express, Inc. v. MedPets.Com, Inc.*, 336 F. Supp. 2d 1213, 1217 (S.D. Fla. 2004) (citation omitted). "Damages may be awarded only if the record adequately reflects the basis for award via 'a hearing or a demonstration by detailed affidavits establishing the necessary facts.'" *Adolph Coors Co. v.*

*Movement Against Racism and the Klan*, 777 F.2d 1538, 1544 (11th Cir. 1985) (quoting *United Artists Corp. v. Freeman*, 605 F.2d 854, 857 (5th Cir. 1979)). To that end, at the March 20 evidentiary hearing, Jetchill was permitted to submit evidence to support its request for damages.

## III.   DISCUSSION

Before evaluating the sufficiency of Plaintiff's various claims, the Court must confirm that it has jurisdiction to enter judgment. The Court has subject-matter jurisdiction under 28 U.S.C. § 1331 because Plaintiff asserts its claims under the Lanham and Patent Acts. The Court has personal jurisdiction over Defendant because Defendant advertises, offers to sell, and markets its allegedly infringing products within this District. (ECF No. 1 ¶¶ 6–13); *see also easyGroup Ltd. v. Skyscanner, Inc.*, No. 20-20062-CIV, 2020 WL 5500695, at *7 (S.D. Fla. Sept. 11, 2020) (Altonaga, C.J.) (holding that under Florida's long-arm statute, "a trademark infringement on an Internet website causes injury and occurs in Florida by virtue of the website's accessibility in Florida"). Personal jurisdiction independently exists via waiver; Defendant appeared in this litigation, litigated without contesting the Court's personal jurisdiction, and later defaulted. Finally, venue is proper under 28 U.S.C. § 1391(b)(2) because "a substantial part of the events or omissions giving rise to the claim occurred" in the Southern District of Florida.

Having examined the sufficiency of Plaintiff's Complaint, (ECF No. 1), I conclude that Plaintiff has sufficiently alleged causes of action for: Trademark Infringement, False Designation of Origin, Common Law Trademark Infringement, Utility Patent Infringement, and Design Patent Infringement. I recommend that the Court enter default judgment in favor of Jetchill against Shenzhen Jiarui Minghui Trading Co., Ltd. and Explonova Store on the above Counts.

### A.  Default Judgment

#### 1.   Trademark Infringement Under 15 U.S.C. § 1114

The Complaint's well-pled allegations, in conjunction with record evidence, support a finding of liability against Defendants for trademark infringement. To prevail on a trademark infringement claim, a plaintiff must demonstrate that (1) its mark has priority; (2) defendant used its mark in commerce without consent; and (3) defendant's mark is likely to cause consumer confusion. *Chanel, Inc. v. Palant*, No. 12-cv-80434, 2013 WL 12065876, at *2 (S.D. Fla. Jan. 14, 2013) (quotation omitted); *see also Planetary Motion, Inc. v. Techsplosion, Inc.*, 261 F.3d 1188, 1193 (11th Cir. 2001) (citing *Lone Star Steakhouse & Saloon, Inc. v. Longhorn Steaks, Inc.*, 106 F.3d 355, 360 (11th Cir. 1997)).

Plaintiff alleges that it registered the "FLAVOUR BLASTER" trademark, Registration No. 7,367,037, on April 23, 2024. (ECF No. 1 ¶¶ 31–32). The Mark is valid and registered on the Principal Register of the United States Patent and Trademark Office. (*Id.* ¶ 32); (ECF No. 1-1). The Mark is displayed atop Plaintiff's Flavour Blaster product and on the packaging and manuals used for selling the Flavour Blaster and associated products. (ECF No. 1 ¶ 34). It is a well-known and famous symbol "of Plaintiff's quality goods, reputation and goodwill and has never been abandoned." (*Id.* ¶¶ 38, 40). Indeed, consumers "readily identify merchandise bearing or sold under the [Mark] as being high-quality goods sponsored and approved by Plaintiff," such that the Mark is associated with the Jetchill brand. (*Id.* ¶¶ 45). Plaintiff has never assigned or licensed the Mark to Defendant. (*Id.* ¶ 37).

Defendant is "promoting, advertising, distributing, selling, and/or offering for sale knock offs of Plaintiff's [Flavour Blaster]" and associated products through various Internet-based e-commerce stores. (*Id.* ¶ 104). Defendant's knock off products "use[] a confusingly similar mark to the FLAVOUR BLASTER Mark without authorization." (*Id.* ¶ 106). Its use of the Mark is intended to attract online customers and drive them to Defendant's e-commerce stores. (*Id.* ¶ 107). Defendant has further used the Mark "with the knowledge and intent that [its] goods will be

mistaken" for the Flavour Blaster and associated products despite Defendant's knowledge that it lacks the necessary authorization. (*Id.* ¶ 111). Consumers believe that Defendant's goods "are genuine goods originating from, associated with, and approved by Plaintiff," meaning "[t]he net effect of [Defendant's] actions is likely to cause confusion" among consumers. (*Id.* ¶ 114).

Taking the above allegations as true, Plaintiff has sufficiently established that its Mark has priority, that Defendant used the Mark without Plaintiff's consent, and that such use is likely to cause consumer confusion. Consumer confusion is further supplemented by Mr. Flunder's testimony at the March 20 evidentiary hearing, that several consumers who purchased Defendant's Aroma Blaster have contacted Jetchill with complaints as to its quality. Accordingly, the undersigned recommends that judgment be entered for Plaintiff on Plaintiff's Trademark Infringement claim.

### 2.  False Designation of Origin Under U.S.C. § 1125(a)

To prevail on its claim for false designation of origin under Section 43(a) of the Lanham Act, Plaintiff must prove that Defendant used in commerce, in connection with any goods or services, any word, term, name, symbol or device, or any combination thereof, or any false designation of origin that is likely to deceive as to the affiliation, connection, or association of Defendant with Plaintiff, or as to the origin, sponsorship, or approval, of Defendant's goods by Plaintiff. *Chanel, Inc. v. Replicachanelbag*, 362 F. Supp. 3d 1256, 1262 (S.D. Fla. 2019) (citing 15 U.S.C. § 1125(a)). Analysis of the element of likelihood of confusion on a false designation of origin claim is coextensive with analysis of the likelihood of confusion on a trademark infringement claim. *Id.*; *see also John H. Harland, Inc. v. Clarke Checks, Inc.*, 711 F.2d 966, 972 (11th Cir. 1983); *Boston Prof'l Hockey Ass'n, Inc. v. Dallas Cap & Emblem Mfg., Inc.*, 510 F.2d 1004, 1010 (5th Cir. 1975).

Based upon the recitation of the well-pled allegations and relevant evidence offered in support of Plaintiff's Trademark Infringement claim above,[3] the undersigned recommends that judgment be entered for Plaintiff on Plaintiff's claim of False Designation of Origin as well.

### 3.   Common Law Trademark Infringement

Florida common law trademark infringement requires the same showing as Plaintiff's claim of trademark infringement under the Lanham Act. *Pepsico, Inc. v. Distribuidora La Matagalpa, Inc.*, 510 F. Supp. 2d 1110, 1113 (S.D. Fla. 2007) (citations omitted); *see also Gift of Learning Found., Inc. v. TGC, Inc.*, 329 F.3d 792, 802 (11th Cir. 2003) (citing *Investacorp, Inc. v. Arabian Inv. Banking Corp. (Investcorp) E.C.*, 931 F.2d 1519, 1521 (11th Cir. 1991)). For the same reasons the undersigned concludes that entry of default judgment is warranted on Plaintiff's trademark infringement claim under the Lanham Act, the undersigned recommends that default judgment be entered on Plaintiff's analogous claim under Florida law as well.

### 4.   Utility Patent Infringement Under 35 U.S.C. § 271

To establish utility-patent infringement, Plaintiff must show that Defendant made, used, sold, or offered for sale, in the United States, a product that meets at least one of the claims of the asserted patent. 35 U.S.C. § 271(a). Determining utility patent infringement involves a two-step process where first, the claim language is interpreted as a matter of law, and second, the accused device is compared to the interpreted claim to determine infringement as a question of fact. *Markman v. Westview Instruments, Inc.*, 52 F.3d 967 (Fed. Cir. 1995); *Read Corp. v. Portec, Inc.*, 970 F.2d 816, 821–22 (Fed. Cir. 1992). "Utility patents may be infringed both literally and under the doctrine of equivalents." *Pac. Coast Marine Windshields Ltd. v. Malibu Boats, LLC*, 739 F.3d

---

[3] I note the Complaint's further allegation, admitted upon default, that Defendant has used "words or other symbols and trade dress[] which tend to falsely describe or represent" its Aroma Blaster products' provenance "with full knowledge of the falsity of such designations of origin and such descriptions and representations[.]" (ECF No. 1 ¶ 150).

694, 700 (Fed. Cir. 2014). Plaintiff alleges infringement by the latter means, claiming that the Aroma Blaster performs "substantially the same overall function or work, in substantially the same way, to obtain substantially the same overall result as the [Flavour Blaster]." (ECF No. 93 at 11); *Graver Tank & Mfg. Co. v. Linde Air Prods. Co.*, 339 U.S. 605, 609 (1950) (describing this "triple identity" test as "[t]he primary test for equivalency"); *Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 21 (1997).

The Parties did not dispute claim construction at the evidentiary hearing on Plaintiff's Motion for Preliminary Injunction. Accordingly, the undersigned construed the words of Plaintiff's Design Patent claim in line with "their ordinary and customary meaning." (ECF No. 89) (citing *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996)). "[T]he ordinary and customary meaning of a claim term is the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention, i.e., as of the effective filing date of the patent application." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1313 (Fed. Cir. 2005).

The Utility Patent claims "a device for creating a vapour filled bubble," comprising:

a dispensing nozzle including a liquid retention formation for assisting bubble creation; an air displacement element; a vapour producing means comprising a source of vapour producing liquid and a means for heating the liquid; wherein the air displacement element is arranged to provide airflow through the vapour producing means to produce vapour for delivery to the dispensing nozzle. The arrangement provides a system for the creation of vapour filled bubbles to accompany refreshments.

(ECF No. 1-3). Defendant did not dispute that its aroma gun infringes the Utility Patent under the doctrine of equivalents. Instead, it argued that the Utility Patent was invalid as obvious and under a theory of inequitable conduct. It failed to substantiate either defense at the preliminary injunction hearing and, in any event, those affirmative defenses were abandoned upon Defendant's default. *See Clever Covers, Inc. v. S.W. Fla. Storm Defense, LLC*, 554 F. Supp. 2d 1303, 1307–08 (M.D. Fla. 2008); *Buchanan v. Bowman*, 820 F.2d 359, 361 (11th Cir. 1987).

Plaintiff's allegations support validity. Plaintiff "owns all right, title and interest in U.S. Patent No. 11,944,994 B2 entitled 'DEVICE OR SYSTEM FOR CREATING A VAPOUR FILLED BUBBLE', claiming the technical and functional features of its VAPOUR BLASTER branded vapour filled bubble maker." (ECF No. 1 ¶ 172). The Utility Patent was registered on April 2, 2024. (ECF No. 1-3). Plaintiff's argument under the triple-identity test, raised in the Motion for Default Judgment, (ECF No. 93 at 10–11), was supported by its evidentiary showing at the hearing on Plaintiff's Motion for Preliminary Injunction; the Court there concluded that the evidence advanced sufficed to show a clear likelihood of success on the merits of its claims. (ECF No. 89 at 32–35). Accordingly, the undersigned finds that the Complaint's well-pled allegations and the record evidence entitle Plaintiff to the entry of default judgment on its claim of Utility Patent Infringement.

### 5.   Design Patent Infringement Under 35 U.S.C. § 271

To prevail on its design patent infringement claim, Plaintiff must make the same showing as is required on its utility patent claim and must further meet the "ordinary observer" test. *Zhou v. The Individuals, P'Ships and Unincorporated Ass'ns Identified on Schedule "A"*, No. 24-cv-24931, 2025 WL 4098285, at *2 (S.D. Fla. Dec. 9, 2025) (citing *Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 679 (Fed. Cir. 2008) (*en banc*)). The ordinary observer test for design patent infringement considers whether an ordinary observer familiar with a claimed design, an accused infringing product, and prior art for the claimed design would be deceived into confusing the claimed design with the accused product. *See Egyptian Goddess*, 543 F.3d at 684. The test "requires the fact finder to 'compar[e] similarities in overall designs, not similarities of ornamental features in isolation'" *Lanard Toys, Ltd. v. Dolgencorp LLC*, 958 F.3d 1337, 1343 (Fed. Cir. 2020). The test proceeds in two increments: "(1) the court first construes the claim to determine its meaning and scope; [and] (2) the fact finder then compares the properly construed claim to the accused design."

*Acufloor, LLC v. Eventile, Inc.*, No. 21-cv-802, 2022 WL 861575, at *3 (M.D. Fla. Mar. 23, 2022) (quoting *Lanard Toys*, 958 F.3d at 1341).

The record evidence and Plaintiff's well-pled allegations, taken as true, support judgment for Plaintiff. Plaintiff "owns all right, title, and interests in, and/or has standing to sue for infringement of U.S. Design Patent No. D960,994 S entitled "BUBBLE MAKER" claiming the ornamental features of its aroma guns." (ECF No. 1 ¶ 164). Plaintiff's Design Patent was registered on August 16, 2022. (ECF No. 1-2). Defendant also owns a design patent for the Aroma Blaster, entitled "Smoke Device," U.S. Patent No. D1,049,471 S. (ECF No. 78-1).

Plaintiff's Design Patent claim, incorporated as an Exhibit into the Complaint, contemplates "the ornamental design for a bubble maker, as substantially shown and described" in six drawings. (ECF No. 1-4). In *Egyptian Goddess*, the Federal Circuit noted "that design patents 'typically are claimed as shown in drawings,' and that claim construction 'is adapted accordingly.'" 543 F.3d at 679 (quoting *Arminak & Assocs., Inc. v. Saint-Gobain Calmar, Inc.*, 501 F.3d 1314, 1319 (Fed. Cir. 2007)); *see also Goodyear Tire & Rubber Co. v. Hercules Tire & Rubber Co., Inc.*, 162 F.3d 1113, 1116 (Fed. Cir. 1998). "Given the recognized difficulties entailed in trying to describe a design in words, the preferable course ordinarily will be for a district court not to attempt to 'construe' a design patent claim by providing a detailed verbal description of the claimed design." *Egyptian Goddess*, 543 F.3d at 679. "[T]he court is not obligated to issue a detailed verbal description of the design if it does not regard verbal elaboration as necessary or helpful." *Id.*

The undersigned compared Plaintiff's Design Patent claims, shown in drawings, to Defendant's Aroma Blaster at the evidentiary hearing on Plaintiff's Motion for Preliminary Injunction. *See* (ECF No. 89 at 30–31). I did so after considering the prior art listed on the Design Patent and advanced by Defendant at the preliminary injunction hearing, and concluded that the prior art before the Court bore little ornamental resemblance either to Plaintiff's design or

10

Defendant's aroma gun product. (*Id.* at 30). By contrast, the Aroma Blaster's overall "look" was "remarkably similar" to the Flavour Blaster and the claimed design underlying it. Both products resemble handheld sci-fi "blaster" guns, ornamented with a sleek, matte finish, a flat base, a single handle, and a bulbous top from which a nozzle protrudes. The Flavour Blaster's "Star Wars" aesthetic, Mr. Flunder testified, is critical to Plaintiff's aesthetic design and brand. The record evidence substantiates Plaintiff's allegations; an ordinary observer familiar with the prior art, viewing the Flavor Blaster and Aroma Blaster in isolation, could be deceived into thinking that the Aroma Blaster manifests Plaintiff's design. The undersigned recommends that judgment be entered for Plaintiff on Plaintiff's claim of Design Patent Infringement.

## B. Relief

### 1. Damages

Under 35 U.S.C. § 284, design patent or utility patent infringers may be liable for lost profits or a reasonable royalty. Upon finding for the claimant in an action for patent infringement, "the court shall award the claimant damages adequate to compensate for the infringement, but in no event less than a reasonable royalty for the use made of the invention by the infringer." 35 U.S.C. § 284. These damages may be increased "up to three times the amount found or assessed." *Id.* "In determining damages for patent infringement, 'the focus is on compensating the patentee or the plaintiff for this injury.'" *Shenzhen Z Tech Co. Ltd. v. P'Ships & Unincorporated Ass'ns Identified on Schedule "A"*, No. 25-cv-21474, 2025 WL 2840693, at *4 (S.D. Fla. Oct. 3, 2025) (quoting *IMX, Inc. v. E-Loan, Inc.*, 748 F. Supp. 2d 1354, 1361 (S.D. Fla. 2010)). "[T]he general rule for determining actual damages to a patentee that is itself producing the patented item is to determine the sales and profits lost to the patentee because of the infringement." *Rite-Hite Corp. v. Kelley Co., Inc.*, 56 F.3d 1538, 1545 (Fed. Cir. 1995). Plaintiff seeks to recover an award of lost profits, trebled to account for Defendant's willful infringement of its design and utility patents.

11

Determining an award under 35 U.S.C. § 289, specific to design patent infringement, involves two steps: "First, identify the 'article of manufacture' to which the infringed design has been applied. Second, calculate the infringer's total profit made on that article of manufacture." *Samsung Elecs. Co. v. Apple, Inc.*, 580 U.S. 53, 59 (2016). The plaintiff has the initial burden to show the article of manufacture and the defendant's total profit thereupon; the defendant then has the burden to produce evidence as to any deductions from the total profit identified by the plaintiff. *Purple Innov., LLC v. The Individuals, Corps., Ltd. Liab. Cos., P'ships, & Unincorporated Ass'ns Identified on Schedule "A"*, No. 25-cv-20637, 2025 WL 4098284, at *7 (S.D. Fla. Sept. 2, 2025) (citations omitted). "When calculating an infringer's profits, courts have held in similar contexts that any uncertainty is to be resolved against the infringer." *Id.* (collecting cases).

Here, the Design Patent claims the ornamental design for a bubble maker. That ornamental design is manifest in Plaintiff's Flavour Blaster aroma gun. The relevant article of manufacture, then, is Defendant's counterfeit Aroma Blaster aroma gun.

Plaintiff advances Amazon sales data produced pursuant to the TRO entered in this case, which discloses that Defendant "sold a total [of] 1,212 units of accused product for a net revenue of $335,600.94." (ECF No. 93 at 16) (citing (ECF No. 93-2 at 4)). Defendant has at no point advanced materials characterizing its revenues in opposition to Plaintiff's claim. "In cases where defendants have failed to produce documents to characterize revenue, courts have entered a profits award for the entire revenue amount [claimed]." *Shenzhen Z Tech Co. Ltd.*, 2025 WL 2840693, at *5 (collecting cases). At the March 20 hearing, Plaintiff represented that it stands on its request for trebled damages limited to the Amazon sales data submitted in conjunction with its Motion; this request does not include data now inaccessible to Plaintiff by virtue of Defendant's default, such as sales data from Defendant's proprietary webstore. As such, an award of the total revenues reflected in the Amazon sales data is proper.

12

That award should be trebled. A defendant's default warrants an inference of willfulness. *Atelier Eumori v. Buufan*, No. 25-cv-23426, 2026 WL 625041, at *2 (S.D. Fla. Jan. 8, 2026) (citing *Mentor Grp., LLC v. Wu*, No. 09-cv-874, 2010 WL 2363511, at *3 (M.D. Fla. May 19, 2010); *PetMed Express*, 336 F. Supp. 2d at 1220. By admitting the Complaint's well-pled allegations of fact, Defendant effectively concedes the issue. *Id.* Accordingly, consistent with 35 U.S.C. §§ 284 and 289, the undersigned recommends that an award of damages issue for Plaintiff in the amount of $335,600.94, trebled as requested to a product of $1,006,802.82.

### 2. Permanent Injunctive Relief

In moving for default judgment, Plaintiff seeks entry of a permanent injunction restraining Defendant from continuing to infringe its patent and trademark rights. Permanent injunctive relief is appropriate where a plaintiff demonstrates that (1) it has suffered irreparable injury; (2) there is no adequate remedy at law; (3) the balance of hardship favors an equitable remedy; and (4) issuance of an injunction is in the public's interest. *eBay, Inc. v. MercExchange, LLC*, 547 U.S. 388, 392–93 (2006).

As recounted above, the Complaint alleges irreparable harm throughout. *See, e.g.*, (ECF No. 1 ¶¶ 79, 127, 156, 176). The record evidence preceding the filing of the instant Motion undercut a conclusion of irreparable harm at the preliminary injunction stage. In my Report and Recommendations on Plaintiff's Motion for Preliminary Injunction, (ECF No. 21), I recommended that the Court deny Plaintiff's request for injunctive relief. (ECF No. 89). Plaintiff's evidentiary proffer in support of that motion was deficient in two interrelated respects. First, whereas Plaintiff met its burden to clearly demonstrate a substantial likelihood of success on the merits of its Design and Utility Patent infringement claims, it failed to clearly show a likelihood of success as to its trademark infringement claim. Absent satisfaction of a likelihood of success on the merits of its trademark claim, Plaintiff could not attempt to avail itself of the Trademark Modernization Act's

("TMA") express statutory presumption of irreparable harm. *See* 15 U.S.C. § 1116. No such presumption applies in the patent infringement context. Instead, binding precedent mandates that Plaintiff demonstrate that patent infringement will effect irreparable injury absent the issuance of injunctive relief by meeting the traditional four-factor test for such relief. *See eBay, Inc.*, 547 U.S. at 392–93.

Second, Plaintiff was unable to satisfy the four-factor test on its evidentiary proffer. Much of Plaintiff's showing lent itself to establishing injury remediable by monetary means. Further, elements of the undersigned's analysis of Plaintiff's showing on trademark infringement, combined with indications that Plaintiff had delayed in pursuing the instant action, militated against a finding that Defendant's patent infringement, though substantially likely, warranted imposition of extraordinary injunctive relief against Defendant.

With the entry of default, the Court operates against a distinct procedural backdrop. Defendant has defaulted; the well-pled allegations of the Complaint are admitted and, taken as true, establish Defendant's liability for the misconduct asserted in the Complaint. Courts have routinely concluded that a defendant's default warrants the issuance of injunctive relief as a sanction because the plaintiff is unable to uncover the full extent of monetary relief it could recover from defendant as compensation for the defendant's infringement. *See Kyjen Co., LLC v. Individuals, Corps., Limited Liability Cos., P'ships, & Unincorporated Ass'ns Identified on Schedule "A"*, No. 24-CV-62197, 2025 WL 1433614, at *4 (S.D. Fla. Mar. 6, 2025) (citing *Enpat, Inc. v. Budnic*, No. 11-86, 2011 WL 1196420, at *4 (M.D. Fla. Mar. 29, 2011) (finding that the defendant's refusal to appear "reinforce[d] the inadequacy of a remedy at law and the irreparability of the harm [likely to be imposed] absent an injunction"); *see also Sream, Inc. v. Puff Puff Pass, LLC*, No. 16-cv-62198, 2016 WL 10953912, at *3 (S.D. Fla. Dec. 14, 2016) (collecting cases).

As discussed above, Plaintiff's well-pleaded allegations make out a claim of trademark infringement. Thus, the statutory rebuttable presumption of irreparable harm in cases of trademark infringement is in play. In *eBay*, the Supreme Court sat in review of lower courts' entry of a permanent injunction grounded in a judicially created presumption of irreparable harm in patent cases. The Court rejected application of such categorical rule, reasoning that the Patent Act's "creation of a right is distinct from the provision of remedies for violations of that right." *eBay*, 547 U.S. at 392. In so doing, the Court noted that "[n]othing in the Patent Act indicates that Congress intended [ ] a departure" from the long tradition of equity practice. *Id.* at 391. Post-*eBay*, the Eleventh Circuit intimated but did not hold that the Supreme Court's decision impacted analogous categorical presumptions in the domain of trademark law. *See N. Am. Med. Corp. v. Axiom Worldwide, Inc.*, 522 F.3d 1211, 1228 (11th Cir. 2008) ("[W]e decline to decide whether the district court was correct in its holding that the nature of [ ] trademark infringement gives rise to a presumption of irreparable injury."); *Hoop Culture, Inc. v. GAP Inc.*, 648 F. App'x 981, 984–85 (11th Cir. 2016) ("[W]e need not and do not [make] any express holding about the effect of *eBay* on this specific [trademark] case or this circuit's presumption of irreparable harm more generally.").

Enter the TMA. By contrast to the Patent Act considered in *eBay*, the TMA amends the Lanham Act and expressly provides that a plaintiff seeking an injunction in relief for trademark infringement "shall be entitled to a rebuttable presumption of irreparable harm upon a finding of a violation[.]" 15 U.S.C. § 1116(a). This represents a key departure from the Lanham Act's prior language, which like the Patent Act granted federal courts the "power to grant injunctions, according to the principles of equity and upon such terms as the court may deem reasonable." *N. Am. Med. Corp.*, 522 F.3d at 1228 (quoting 15 U.S.C. § 1116(a) (2006)). While a binding decision on point has yet to issue, the Eleventh Circuit has upheld permanent injunctions issued in

15

accordance with the codified presumption since the TMA's enactment. *See, e.g.*, *Spring Commcn's, Inc. v. Calabrese*, No. 22-11717, 2024 WL 1463416, at *5 (11th Cir. Apr. 4, 2024). The undersigned recommends doing so here. The likelihood of confusion entailed by trademark infringement, at length alleged in the Complaint, bolsters Plaintiff's contention that irreparable harm flows not just from Defendant's marketing of its "Aroma Blaster" but also from the resemblance the Aroma Blaster bears, in form and function, to Plaintiff's Flavour Blaster.

The record evidence corroborates the above conclusion. The undersigned queried Plaintiff's counsel on the issue of irreparable harm at the March 20 hearing. Mr. Flunder offered responsive testimony that, since the evidentiary hearing on the Motion for Preliminary Injunction, Plaintiff has received complaints from several consumers indicating actual confusion as to the Aroma Blaster's provenance. In this posture, Mr. Flunder's testimony supports a finding that Plaintiff and Defendant market their aroma guns to a not insignificant set of common consumers. Overlap in the Parties' consumer markets substantiates Plaintiff's assertion of irreparable harm on its trademark and patent claims; it indicates that Defendant's trademark and patent infringement have confused consumers who, but for such infringement, would direct demand to Plaintiff's product. *See BlephEx, LLC v. Myco Indus., Inc.*, 24 F.4th 1391, 1405 (Fed. Cir. 2022); *Tinnus Enters., LLC v. Telebrands Corp.*, 846 F.3d 1190, 1207–1208 (Fed. Cir. 2017); *Robert Bosch LLC v. Pylon Mfg. Co.*, 659 F.3d 1142, 1151 (Fed. Cir. 2001). Absent injunctive relief, the undersigned is persuaded Plaintiff's brand reputation, brand control, and market share will face continued distortion.

An award of monetary damages alone would not suffice to cure the injury to Plaintiff's reputation and goodwill that will result if Defendant's infringing and counterfeiting actions continue. *See Chanel, Inc. v. Sea Hero*, 234 F. Supp. 3d 1255, 1262 (S.D. Fla. 2016). Further, Defendant's default deprives Plaintiff of the opportunity to take discovery. Even if Plaintiff's

16

asserted injuries were, by some reliable metric, capable of being quantified in support of its prayer for monetary relief, Plaintiff is left with an incomplete picture of the full measure of damages to which Defendant's infringement may have subjected it.

The first two factors of the permanent injunction analysis are met. The undersigned further concludes that the balance of hardships favors Plaintiff. At the evidentiary hearing, Plaintiff proffered that Defendant, though defaulted, has continued to market the Aroma Blaster online. Plaintiff faces hardship from its inability to control either its reputation in the marketplace or the quality of goods susceptible to being mistaken as its own, as well as by its loss of sales to Defendant's counterfeit. Defendant faces no hardship if it is prohibited from the infringement of Plaintiff's trademarks, which is an illegal act. The balance of hardships favors Plaintiff. *See Replicachanelbag*, 362 F. Supp. 3d at 1264 (finding that the balance of harms favored the issuance of a permanent injunction where the plaintiff faced "hardship from loss of sales and its inability to control its reputation in the marketplace," whereas the defendants stood to face "no hardship if . . . prohibited from the infringement of [the] [p]laintiff's trademarks, which is an illegal act").

Finally, issuance of a permanent injunction against Defendant is in the public interest, to protect Plaintiff's patent and trademark interests and protect the public from being defrauded by the selling of goods that infringe Plaintiff's intellectual property, mislead consumers as to the goods' origin, and deprive Plaintiff of quality control over the Flavour Blaster brand. *See besumart.com*, 240 F. Supp. 3d at 1291 (citing *Nike, Inc. v. Leslie*, No. 85-960 Civ, 1985 WL 5251, at *1 (M.D. Fla. Jun. 24, 1985) ("[A]n injunction to enjoin infringing behavior serves the public interest in protecting consumers from such behavior.")). With the above considerations in mind, the undersigned recommends that Plaintiff's request for permanent injunctive relief be **GRANTED**.

## C. Attorney's Fees and Costs

Pursuant to 15 U.S.C. § 1117(a) and (b) and 35 U.S.C. § 285, Plaintiff seeks an award of reasonable attorney's fees in connection with prosecuting this action. Attorney's fees are available under the Lanham Act and the Patent Act in "exceptional cases." *See* 15 U.S.C. § 1117(a); 35 U.S.C. § 284; *see also Spanakos v. Aronson*, No. 17-80965-CV, 2020 WL 10459636, at *1 (S.D. Fla. Mar. 24, 2020) (citation omitted). An exceptional case is "simply one that stands out from others with respect to the substantive strength of the party's litigating position . . . or the unreasonable manner in which the case was litigated." *Tobinick v. Novella*, 884 F.3d 1110, 1117–18 (11th Cir. 2018) (quoting *Octane Fitness LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 554 (2014)). Courts often find cases "exceptional" where Defendant has admitted allegations of willful infringement by default. *Spanakos*, 2020 WL 10459636, at *1; *Sream, Inc.*, 2016 WL 10953912, at *4. Defendant has admitted Plaintiff's allegations of willfulness by defaulting. The fact of default is independently pertinent here; by abandoning this action midway through, Defendant left Plaintiff to foot the bill of pressing claims now incapable of being resolved in an adversarial framework. So too has Defendant's default deprived Plaintiff of the ability to ascertain, through discovery, the full measure of compensation to which it might be entitled upon a finding of liability on its claims. The totality of the circumstances warrants finding this case exceptional under the Lanham and Patent Acts. *See Octane Fitness*, 572 U.S. at 554; *Sream, Inc.*, 2016 WL 10953912, at *4. I thus recommend that the Court permit Plaintiff to recover attorney's fees in connection with this suit.

Plaintiff seeks an award of attorney's fees in the amount of $43,360,00. In support of its request, Plaintiff has submitted the Declaration of Joel B. Rothman, (ECF No. 93-1), and Plaintiff's counsel's invoices for fees incurred in connection with this matter, (ECF No. 93-3). In total, Attorney Joel Rothman worked 27.90 hours at a rate of $650.00 per hour, Attorney Angela Nieves

worked 45.70 hours at a rate of $450.00 per hour, Paralegal Lindsey Colyer worked 10.70 hours at a rate of $250.00 per hour, Lead Paralegal Jamie James worked 0.4 hours at a rate of $300.00 per hour, and Client Services Liaison Vanessa Zuleta worked 2.2 hours at a rate of $200.00 per hour. Upon review, and with the benefit of counsel's oral proffer at the March 20 evidentiary hearing, the undersigned finds these attorney billing rates and hours worked reasonable. As noted at the March 20 hearing, however, the undersigned does not find counsel's paralegal and client services liaison billing rates reflect a rate reasonable in this District. Accordingly, and with counsel's agreement, the undersigned recommends that Lead Paralegal James and Paralegal Colyer's hourly rates be awarded at a rate of $175.00 per hour, to a product of $1,942.50 for their services. The undersigned further recommends, again with Plaintiff's counsel's assent, that Client Services Liaison Zuleta's compensable hours worked be reduced by half, resulting in an award of $220.00 for her services. Altogether, then, I recommend that Plaintiff be awarded reasonable attorney's fees in the total amount of $40,862.50.[4]

Plaintiff further seeks an award of $1,991.35 in reasonable costs. Its request is attended by an itemization of costs incurred in connection with this action, (ECF No. 93-3), and receipts for each expenditure sought to be awarded. Upon review, I find that the request for costs is reasonable and recommend that they be awarded in full.

## IV.   CONCLUSION

For the foregoing reasons, the undersigned respectfully **RECOMMENDS** that Jetchill's Motion for Default Judgment, (ECF No. 93), be **GRANTED**, *i.e.*, that the Court enter final default judgment against Defendant by separate order pursuant to Federal Rule of Civil Procedure 58(a),

---

[4] This award does not include the combined 5.7 hours worked by Lena Carballo Alvisa and Ariel Kapul on the case. *See* (ECF No. 93-3). Neither the Motion nor the Declaration attached thereto, (ECF Nos. 93, 93-1), mention these employees or substantiated Plaintiff's assertion that their work performed on this matter merits inclusion in an award of reasonable attorney's fees.

permanently enjoin Defendant from engaging in future infringing activities, award Plaintiff damages in the total amount of **$1,006,802.82**, and award Plaintiff attorney's fees and costs in the total amount of **$42,853.85**.

A party shall serve and file written objections, if any, to this Report and Recommendations with the Honorable David S. Leibowitz, United States District Judge for the Southern District of Florida, within **FOURTEEN (14) DAYS** of being served with a copy of this Report and Recommendation.  Failure to timely file objections will bar a *de novo* determination by the District Judge of anything in this recommendation and shall constitute a waiver of a party's "right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions." 11th Cir. R. 3-1 (2016); 28 U.S.C. § 636(b)(1); *see also Harrigan v. Metro-Dade Police Dep't Station #4*, 977 F.3d 1185, 1191–92 (11th Cir. 2020).

**RESPECTFULLY SUBMITTED** in Chambers at Miami, Florida, this 22nd day of May, 2026.

_____
LAUREN F. LOUIS
UNITED STATES MAGISTRATE JUDGE